242

Merrimack
No. 82-178

THE STATE OF NEW HAMPSHIRE

v.

ALAN SCHNEIDER

December 12, 1983

*Gregory H. Smith*, attorney general (*Michael A. Pignatelli*, assistant attorney general, on the brief and orally), for the State.

*Wescott, Millham & Dyer*, of Laconia (*Steven M. Latici* on the brief and orally), for the defendant.

BROCK, J.   The defendant was convicted after a jury trial in Merrimack County Superior Court (*Souter*, J.) on a charge of driving while intoxicated. RSA 265:82. The issue on appeal is whether the trial court erred in denying the defendant's motion to suppress the results of a breathalyzer test, on the ground that the test results were the fruit of an invalid arrest. We find no error and affirm.

The facts are not in dispute. Around midnight on August 29–30, 1981, two officers of the Franklin Police Department, while patrolling in a police cruiser, observed the defendant's truck travelling erratically through the streets of Franklin. While they were following the truck, and just before they stopped it, the officers received an emergency radio call requiring their presence elsewhere. They then called for assistance from the State Police, and a State trooper arrived on the scene roughly four minutes after the truck had been stopped. The Franklin officers, who had merely examined the defendant's driver's license, informed the trooper of what they had observed and then departed.

The trooper noted that the truck's cab smelled of alcohol and that the defendant's eyes were glassy and his speech slurred. The trooper then performed a "field sobriety test" and determined that the defendant was unsteady while standing, walking and turning. The defendant was then placed under arrest and taken to the Franklin

police station, where he was given a breathalyzer test at 1:16 a.m., on August 30.

Before trial, the defendant moved to suppress the results of the breathalyzer test. At the hearing on the motion, he argued that the State had failed to prove that the trooper's arrest of the defendant was valid in the absence of a warrant, and that the test results were accordingly inadmissible as evidence. *State v. Scanlon*, 110 N.H. 179, 263 A.2d 669 (1970). The trial judge ruled, for reasons discussed below, that the arrest was valid under RSA 594:10, I(c) (Supp. 1981). The test results were admitted into evidence, the defendant was convicted, and this appeal followed.

The 1981 amendment to RSA 594:10, which took effect two weeks before the defendant's arrest, reads in pertinent part as follows:

> "I. An arrest by a peace officer without a warrant on a charge of a misdemeanor or a violation is lawful whenever:
>
> (a) He has probable cause to believe that the person to be arrested has committed a misdemeanor or violation in his presence; or
>
> . . . .
>
> (c) He has probable cause to believe that the person to be arrested has committed a misdemeanor or violation; and, if not immediately arrested, such person will not be apprehended, will destroy or conceal evidence of the offense, or will cause further personal injury or damage to property."

The State concedes that no offense was committed in the State trooper's presence, since the defendant was not operating his vehicle when the trooper arrived. *See State v. Scanlon*, 110 N.H. at 180, 263 A.2d at 670. It also concedes that the trooper had no probable cause to believe that the defendant would not be apprehended, or would cause further personal injury or property damage, if not arrested at the scene. The State relies on the trial judge's ruling that the trooper had probable cause to believe an offense had been committed— which the defendant conceded at oral argument—and that he also had probable cause to believe that the defendant would destroy or conceal evidence if not immediately arrested. It is this final point that is in dispute here.

The trial judge's ruling was based on his taking judicial notice of the

> "common knowledge . . . that alcohol is metabolized and that the longer it takes to get the [breathalyzer] test done, the less probative the test results as such will be . . . . I

think it is reasonable at least for [the trooper] to have concluded that he would not have an easy time getting a warrant in a DWI case sometime after midnight. So that I think it was reasonable for him to expect at that point that if he did not make the arrest, enough time would probably pass before he could get a warrant so that any tests that he might ultimately succeed in getting would have been of substantially diminished probative value."

The defendant argues, first, that taking judicial notice of the metabolization of alcohol was improper; second, that even if it was proper, "[a] gradual reduction of alcohol level in the blood does not amount to a destruction of evidence within the meaning of RSA 594:10, I(c)"; and third, that the State failed to meet its burden of proving probable cause because it did not introduce any evidence regarding the difficulty of obtaining a warrant in this particular case.

■■ The defendant's first two points were effectively answered by this court when we construed what is now RSA 265:84, the "implied consent statute," to forbid a defendant from being allowed to take an alcohol-level test after he had initially refused to take it. *Harlan v. State,* 113 N.H. 194, 308 A.2d 856 (1973). "The effectiveness and reliability of the breathalyzer as well as the blood test diminishes with the passage of time. There is no sound reason to give the driver the opportunity to delay the test to his benefit contrary to the purpose of the test and the statute to obtain as accurate an indication of his condition as possible." *Id.,* 113 N.H. at 197, 308 A.2d at 858. (Citations omitted.)

■ The holding in *Harlan* clearly is based on the fact that alcohol is metabolized (*i.e.,* chemically changed) by the blood so as to be undetectable with a breathalyzer, a fact of which other courts have expressly taken judicial notice. *People v. Huber,* 232 Cal. App. 2d 663, 671, 43 Cal. Rptr. 65, 70 (1965) (citing *In re Martin,* 58 Cal. 2d 509, 24 Cal. Rptr. 833, 374 P.2d 801 (1962)); *People v. Morse,* 68 Mich. App. 150, 153, 242 N.W.2d 47, 49, *vacated on other grounds,* 397 Mich. 866, 245 N.W.2d 544 (1976); *see also Schmerber v. State of California,* 384 U.S. 757, 770–71 (1966). *Harlan* also indicates that *any* significant delay in taking a breathalyzer test may serve to deprive the State of an accurate indication of the driver's condition; such delay could result in the loss of evidence within the meaning of RSA 594:10, I(c) (Supp. 1981). Of course, the later exercise of the right to refuse a chemical test under RSA 265:84 cannot result in charges being brought for destroying evidence within the meaning of RSA 642:3, I(d).

■ The defendant's third point is likewise without merit. As a preliminary matter, it is necessary to determine the standard of proof required of the State to show that the arrest conformed to the statutory requirements. Because we are concerned here with deterring lawless police conduct, and not with establishing guilt, the "preponderance of the evidence" test is sufficient. *State v. Dearborn*, 114 N.H. 457, 460, 322 A.2d 924, 926 (1974).

■ In this case, the combination of the type of offense and the time of arrest enables the State to meet this standard. It is common knowledge that an arrest warrant, like any legal document, is considerably more difficult to obtain at night than during working hours. At least one court has held this to be a significant factor in validating warrantless searches, when delay could result in the destruction of evidence. *United States v. Allison*, 639 F.2d 792, 794 (D.C. Cir. 1980); *United States v. Hendrix*, 595 F.2d 883, 886 (D.C. Cir. 1979). The fact that the incident in this case occurred at midnight, combined with the established fact of the metabolization of alcohol by the blood, was sufficient to meet the State's burden of proof on the issue of probable cause. While the rate of metabolization may be slow enough to justify some delay (the record shows that every breathalyzer test is preceded by a twenty-minute wait), the delay inherent in obtaining a warrant at night can be too great.

■ We need not decide whether, in circumstances under which a warrant could be easily and quickly obtained without causing significant delay of a blood-alcohol test, an arrest otherwise similar to that in this case would be invalid. We hold only that, under the conditions present here, the State has proved by a preponderance of the evidence that the trooper had probable cause to believe that an arrest under RSA 594:10, I(c) was warranted.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.