Belknap
No. 2004-240

## WILLIAM C. JACKSON *& a.*

v.

## CHARLES W. MORSE, JR. *& a.*

Argued: November 30, 2004
Opinion Issued: April 1, 2005

*Devine, Millimet & Branch, P.A.*, of Manchester (*Thomas Quarles & a.* on the brief, and *Mr. Quarles* orally), for the plaintiffs.

*Orr & Reno P.A.*, of Concord (*James P. Bassett* and *Melissa C. Guldbrandsen* on the brief, and *Ms. Guldbrandsen* orally), for the defendants.

NADEAU, J. The plaintiffs, William C. and Donna Jackson, appeal the jury verdict in Superior Court (*Smukler*, J.) on their claim for promissory estoppel against defendant Charles W. Morse, Jr. and trustee-defendant Ameritrade Holding Corp. They also appeal a post-trial order denying them attorney's fees. We affirm in part, vacate in part and remand.

The plaintiffs commenced this action in April 2003, asserting causes of action for promissory estoppel, negligent misrepresentation and breach of fiduciary duties. They alleged, in part, the following facts. The Jacksons and Morse were long-time friends. In early 2000, Morse offered to invest for the Jacksons funds they had received in settlement of a lawsuit. Morse later promised the Jacksons that if by December 31, 2001, the value of their investment account was less than $62,000, he would make up the shortfall, but only if they gave him complete control over, and did not interfere with his management of, the investment account. In reliance upon Morse's representations of past success in securities investment and his promise to make them whole, the Jacksons accepted his offer and gave him total control over the investment account.

The value of the account dropped to approximately $8,000 by December 31, 2001, and Morse's failure to restore the account to a value of $62,000 prompted the instant lawsuit. The record reflects that only the Jacksons'

promissory estoppel claim went to trial. The jury returned a verdict for the Jacksons in the amount of $29,064.64.

On appeal, the Jacksons argue that the trial court erred in instructing the jury that damages could be limited to the extent of the Jacksons' reliance. Before reaching this argument, however, we must address Morse's contention that the Jacksons failed to preserve this issue for appeal. Specifically, Morse asserts that the true basis of the Jacksons' appeal is that the jury's verdict was too small, and that the Jacksons failed to preserve that issue for appeal because they failed to file a motion for additur.

■ We find Morse's argument unpersuasive because we reject its premise. The Jacksons' challenge of the jury's verdict is based upon a claim that the trial court's instruction on the measure of damages was legally erroneous and apparently confused and misled the jury. The Jacksons preserved this issue by objecting to the court's failure to give their proposed instruction on damages. Accordingly, the issue is properly before us on appeal.

Turning to the merits of the Jacksons' argument, we first note the parties' respective positions on damages. The Jacksons contended at trial, and now argue on appeal, that the only appropriate measure of damages in this case is their expectation interest, in other words, the amount of damages that would put them in the position they would have been in if Morse had performed as he promised. Morse, on the other hand, argued at trial for a reliance measure of damages, in other words, the amount of damages that would put the Jacksons in the position they would have been in if they had not relied upon his promise. On appeal, Morse continues to assert that the law of this and other States supports the view that reliance damages are the appropriate award under a promissory estoppel theory. While both parties objected at trial to giving the jury the choice of damage measures, Morse now argues that the trial "court's jury instructions were not erroneous as a matter of law in that the court properly permitted the jury to exercise its discretion in determining which of the two measures of damages to apply."

Specifically, the court instructed the jury, in part:

> If your verdict is for the plaintiffs, then you must determine the amount of money that will reasonably, fairly, fully, and adequately compensate them for such damages as you find were caused by the legal fault of the defendant. . . .
> . . . .

> The purpose of any damages awarded is to put the plaintiffs in the same position they would have been in if the defendant had not been legally at fault. You should compare the position of the plaintiffs because of the defendant's legal fault to the position they would have been in had the defendant not been legally at fault.
>
> In a promissory estoppel claim, relief may sometimes be limited to damages measured by the extent of the plaintiffs' reliance, rather than by the terms of the promise.

During deliberations, the jury asked the judge to define "legal fault of the defendant." The court responded, in part:

> The legal fault claimed by the plaintiffs is promissory estoppel. . . .

> If you find that the plaintiffs have proved the elements of promissory estoppel—in other words, breach of a legally binding promise, you should consider the parties' different positions on the measure of damages. The plaintiffs claim that the damages caused by the defendant's legal fault should be based on the promise. The defendant claims that any damages should be determined by the plaintiffs' reliance. You are permitted to apply notions of fairness and equity—based on the evidence—to your determination of damages.

"The purpose of jury instructions is to identify issues of material fact, and to inform the jury of the appropriate standards of law by which it is to resolve them." *Carignan v. N.H. Int'l Speedway*, 151 N.H. 409, 418 (2004). Thus, the trial court has a duty to instruct the jury completely and correctly on the law applicable to the case. *Peterson v. Gray*, 137 N.H. 374, 377 (1993). We will find reversible error if an erroneous civil jury instruction could have misled the jury "into basing its verdict on a misperception of the law." *Id.* (quotation omitted).

The award of damages is a "factually driven" determination. *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998). "[T]he amount of damages to be awarded in a particular case is essentially a fact question. However, the choice of the proper measure of damages is a question of law to be decided by the court." *Id.* (citations omitted); *accord Truesdale v. Straw*, 58 N.H. 207, 215 (1877). In some instances, the choice between alternative measures of damages is dependent upon a factual determination that must be made by the jury. *See Hills of Palos Condo. Ass'n v. I-Del, Inc.*, 626 N.E.2d 1311, 1327 (Ill. App. Ct. 1993), *appeal*

*denied*, 631 N.E.2d 708 (Ill. 1994). In those cases, when alternative measures are submitted to the jury, care should be taken to instruct the jury to apply only one measure depending upon how it resolves the underlying factual issue. *Cf. Arch of Ill. v. S.K. George Painting*, 681 N.E.2d 1049, 1051 (Ill. App. Ct. 1997).

The trial court in this case erroneously allowed the jury to make the legal determination of choosing a measure of damages. That this error apparently misled the jury is evidenced by the amount of the verdict, which does not appear to reflect a determination of the measure of damages based upon either reliance or expectation.

The trial court premised its instruction on section 90 of the RESTATEMENT (SECOND) OF CONTRACTS, which sets forth the rule for enforcing a promise that reasonably induces action or forbearance and provides that "[t]he remedy granted for breach may be limited as justice requires." RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981). Comment d to that section explains:

> A promise binding under this section is a contract, and full-scale enforcement by normal remedies is often appropriate. But the same factors which bear on whether any relief should be granted also bear on the character and extent of the remedy. In particular, relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise.

RESTATEMENT (SECOND) OF CONTRACTS § 90 comment d.

■ We agree with this section, and with the trial court, that a single measure of damages is not applicable to every promissory estoppel case. Rather, the appropriate measure will vary with the facts and equities of the case at hand. Thus, in *Marbucco Corp. v. City of Manchester*, 137 N.H. 629, 634 (1993), we held that the damages recoverable for the wrongful failure to award a municipal contract to the lowest responsible bidder should ordinarily be limited to the damages the plaintiff "sustained directly by reason of its justifiable reliance upon the municipality's promise to award the contract to the lowest responsible bidder . . . . Hence, damages ordinarily should be limited to the expenses incurred by the low bidder in its fruitless participation in the competitive bidding process, *i.e.*, its bid preparation costs." We reasoned that "[t]o permit the recovery of greater damages in such cases could drain the public fisc in response to mere carelessness on the part of low level government officials." *Id.* We

noted, however, that under different facts, namely "conduct of the awarding authority tantamount to bad faith," the appropriate measure of damages would be lost profits. *Id.*

Although the appropriate measure of damages will differ from case to case, some guidance can be gleaned from case law. First, we have stated that promissory estoppel "serves to impute contractual stature based upon an underlying promise." *Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 290 (1992). That accords with the RESTATEMENT drafters' comment that "[a] promise binding under [section 90] is a contract, and full-scale enforcement by normal remedies is often appropriate." RESTATEMENT (SECOND) OF CONTRACTS § 90 comment d. Thus, we agree with the court in *Goldstick v. ICM Realty*, 788 F.2d 456, 464 (7th Cir. 1986), that "the value of the promise is the presumptive measure of damages for promissory estoppel, to be rejected only if awarding so much would be inequitable."

Reliance damages may be appropriate in certain instances. Some courts have explained, for instance, that while expectation damages are usually awarded when the promise is clear or definite, damages in the case of an indefinite or unclear promise "will be limited to expenses incurred in reasonable reliance on the vague promise." *Garwood Packaging, Inc. v. Allen & Co., Inc.*, 378 F.3d 698, 703 (7th Cir. 2004); *see also Staley v. Taylor*, 994 P.2d 1220, 1223 n.5 (Or. Ct. App. 2000). We note that some courts apparently take the view that reliance damages constitute the usual measure of damages in promissory estoppel cases, *see, e.g., Rosnick v. Dinsmore*, 457 N.W.2d 793, 800 (Neb. 1990); however, we reject that view in favor of the one we have expressed above. Finally, we note that in some instances, the appropriate remedy may be specific performance, *see, e.g., Taylor v. Eagle Ridge Developers, LLC*, 29 S.W.3d 767, 770 (Ark. Ct. App. 2000), or restitution, *see* 3 E. M. HOLMES, CORBIN ON CONTRACTS § 8.8, at 26, 33 (rev. ed. 1996).

Turning to the facts of this case, the promise to reimburse the Jacksons for any shortfall in the value of their investment account below $62,000, as of a date certain, was a definite promise, the breach of which is presumptively remediable by an award of the value of the promise, in other words, expectation damages. Nevertheless, although the proper measure of damages is a matter of law, we decline to instruct the trial court that it must use the expectation measure of damages on remand. Rather, as noted above, the proper measure of damages is a fact-driven

determination, and we have not been provided with a complete record on appeal. Thus we vacate the damages award and remand for a new trial on damages only. We instruct the trial court that the presumptive measure of damages in this case is expectation damages, but it may choose a different measure if, under the particular facts of this case, it would be more equitable. In addition, if the trial court's decision on the proper measure of damages turns on the resolution of a dispute of fact, the court may submit alternative measures to the jury, taking care to instruct the jury to apply only one measure depending upon how it resolves the factual dispute.

The Jacksons also contend that the trial court erred in refusing to award attorney's fees. Just prior to commencing this action, the Jacksons obtained an *ex parte* attachment in the amount of $53,000 on all of Morse's property, including his investment account with the trustee defendant, Ameritrade Holding Corp. Morse's wife responded by, among other things, serving the Jacksons' attorney with a document purporting to notify the court and parties that she was co-owner of the investment account and that it was her intention to assert her rights in the joint account by suing the Jacksons' attorney in federal court. She stated she would "do so unless the attachment is quashed by the Court, with or without the assent of the [Jacksons]." The record of the evidentiary hearing on the Jacksons' request for attorney's fees supports a finding that Morse assisted his wife to some extent in preparing these documents.

At the hearing on the Jacksons' request for fees, the court indicated that "[i]f attorney's fees were appropriate at all, they would be to respond to the threats to the attorney and the law firm." The trial judge further stated, however, that he was "not inclined to award attorney's fees with respect to preparation or costs incurred to do something on an issue that legitimately either was raised or could have been raised in this case."

Treating the court's statements as an award of attorney's fees, the Jacksons filed a motion to quantify the award, along with an exhibit of their attorneys' time records. Morse objected, claiming, among other things, that the Jacksons' exhibit did not contain "a single time entry that clearly relates to any threatened litigation against Attorney Quarles or his law firm." The court denied the motion for the reasons stated in Morse's objection. The Jacksons filed a motion for reconsideration, which was also denied. The court noted that the Jacksons' motion "once again fails to break out those fees that could be awarded.

The Jacksons argue that the trial court erred in refusing to quantify an award of attorney's fees after initially ruling that the Jacksons were entitled to certain fees. We review a denial of attorney's fees with

deference to the trial court's decision and we will not overturn that decision absent an unsustainable exercise of discretion. *See Town of Littleton v. Taylor*, 138 N.H. 419, 424 (1994); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

■ We cannot say that the trial court exercised its discretion unsustainably by not awarding attorney's fees after the Jacksons failed to cull from their request entries for time spent on issues other than the one the court identified as subject to a fee award. For instance, the time records include entries that pre-date Morse's wife's threat of litigation against the Jacksons' attorneys. We agree with the court in *Mangel v. Bob Dance Dodge, Inc.* that the Jacksons "had the burden of showing the amount of fees and/or costs [they were] entitled to recover. By failing to separate or apportion the recoverable fees from the nonrecoverable fees, [they] failed in [their] burden." *Mangel v. Bob Dance Dodge, Inc.*, 739 So. 2d 720, 724 (Fla. Dist. Ct. App. 1999) (citations omitted).

*Affirmed in part; vacated in part; remanded.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.