Coos
No. 2006-050

THE STATE OF NEW HAMPSHIRE

v.

ALVIN V. DRAKE

Argued: February 21, 2007
Opinion Issued: April 6, 2007

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*Law Office of David H. Bownes, P.C.*, of Laconia (*David H. Bownes* on the brief and orally), for the defendant.

HICKS, J. The defendant, Alvin V. Drake, appeals his conviction for possession of a controlled drug, *see* RSA 318-B:2 (2004); RSA 318-B:26 (2004) (amended 2005, 2006), following a jury trial in Superior Court (*Perkins*, J.). We affirm.

The jury could have found the following facts. On January 21, 2005, Sergeant Christopher Ruel of the New Hampshire Division of Motor Vehicles witnessed a small pickup truck driven by the defendant heading north on Route 3 in Lancaster. The defendant was traveling at a high rate of speed, straddling the centerline and forcing other vehicles off the road. Sergeant Ruel activated his blue lights and followed the defendant, who did not immediately pull over. Sergeant Ruel gave "a couple of blasts of [his] air horn" and activated his siren. The defendant eventually pulled over and parked on the side of the road partially in a snow bank.

Sergeant Ruel approached the defendant's truck, asked him to get out and arrested him. As Sergeant Ruel searched the defendant, he felt a cylindrical object in the defendant's front pocket. At this point, the defendant twisted, reached into his pocket, pulled out a prescription pill bottle and threw it. Sergeant Ruel attempted to handcuff the defendant, but he fought with the officer. After the defendant was handcuffed, Sergeant Ruel found two 2.5-milligram oxycodone tablets in the defendant's pocket and eventually located the prescription bottle. It contained eleven 5-milligram diazepam tablets, seventy-five 5-milligram oxycodone tablets, and thirty-eight 4.5-milligram oxycodone tablets. The name on the prescription bottle label was Andreas Wischlburger.

After the defendant waived his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436 (1966), he claimed that he was the only person who used the truck and everything in it was his, but he did not know where the drugs had come from. He stated that he had been really scared and that is why he threw them. Later, the defendant claimed that the prescription bottle belonged to his wife and that he knew he would be in trouble for having it. During the inventory search of the defendant's truck, Sergeant Ruel found two 4.5-milligram oxycodone tablets in the center console, eleven 7.5-milligram oxycodone tablets in a shaving kit inside a duffle bag, and five 7.5-milligram oxycodone tablets in a black fanny pack. The defendant was indicted on one count of possession of the controlled drug

diazepam, one count of possession of the controlled drug oxycodone, and one count of possession with intent to deliver the controlled drug oxycodone. *See* RSA 318-B:2, :26.

At trial, Wischlburger, the owner of the prescription bottle, testified that he had known the defendant for twenty years; that they both lived in Meredith; and that in December 2004 and January 2005, he had been on the defendant's property cutting wood. During this time period, Wischlburger had been taking diazepam, prescribed to him for pain, on a regular basis for eight or nine years. He would take the diazepam at night in order to sleep. The prescription was last filled on December 8, 2004, and at some point after that he misplaced the bottle. Wischlburger testified that the defendant called and said that he found the prescription bottle and would return it, but Wischlburger was unclear about the time period regarding these events.

At the end of the State's case, the court dismissed the two counts alleging possession of oxycodone. The jury convicted the defendant on the one count of possession of the controlled drug diazepam. On appeal, the defendant argues: (1) that the superior court erred in giving the State's requested jury instructions regarding possession of prescription drugs under RSA 318-B:13 (2004) and RSA 318-B:14 (2004) because the instructions were confusing and irrelevant; and (2) the evidence was insufficient to prove his guilt beyond a reasonable doubt.

We first address the defendant's assertion that the jury instructions were confusing and irrelevant. The defendant first argues that the court's charge impermissibly amended the indictment. The defendant did not object on this basis at trial, however, and we therefore decline to address this claim on appeal. *See State v. McCabe*, 145 N.H. 686, 689-90 (2001). Second, he argues that the jury instructions were misleading, which caused the jury to be confused about the correct legal standard to be used in resolving the material issues of the case. We disagree.

In addressing the defendant's argument, we recognize:

> The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case. When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case. We determine if the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case.

*State v. Bortner,* 150 N.H. 504, 512 (2004) (quotations and citations omitted). Whether or not a particular jury instruction is necessary, and the scope and wording of jury instructions, are both within the sound discretion of the trial court, *see State v. Cook,* 148 N.H. 735, 741-42 (2002); *State v. Evans,* 150 N.H. 416, 420 (2003), and we review the trial court's decisions on these matters for an unsustainable exercise of discretion, *see State v. Poole,* 150 N.H. 299, 301 (2003).

The court instructed the jury on the specific elements of the crime using language that tracked RSA 318-B:2: "That ... the defendant, knowingly had the drug under his custody and control; That [he] knew the drug was under his custody and control; That [he] knew that the controlled drug was in fact Diazepam; and That the drug was in fact Diazepam." The court's instructions adequately and accurately explained each element of the offense. The court then recited RSA 318-B:13 (requirements for prescription labeling) and RSA 318-B:14 (requirements for lawful possession of prescription drugs), followed by an instruction on the defendant's theory of the case: "that the drug, Diazepam, which was found, w[as] lawfully prescribed to a third person and that the state ha[d] not proven beyond a reasonable doubt that the defendant intended to unlawfully exercise possession or control over those drugs."

RSA 318-B:13 and :14 could be reasonably understood as a general overview of the defense's theory of the case. In closing arguments, the defense argued that the issue before the jury was whether the defendant unlawfully possessed Wischlburger's prescription. Moreover, the defense argued that "these were lawfully prescribed pills to a third party and that [the defendant] wasn't possessing them to sell them or to use them or anything other than just to return them to Mr. Wischlburger," and that if the prescription pills lawfully belonged to Wischlburger, then the defendant was not guilty. Reading RSA 318-B:13 and RSA 318-B:14 was likely helpful to the jury in determining whether the defendant's theory was sustainable.

■ We are unconvinced that reading RSA 318-B:13 and RSA 318-B:14 could have misled or confused the jury on the legal standard to be applied. During the jury's charge, the court stated:

> There are a couple of statutes that deal with drugs that I'm going to read to you. The first is RSA 318-B:13. . . . This law says in relative [*sic*] part, whenever a pharmacist dispenses any controlled drug or prescription issued by a practitioner, he or she shall affix to the container in which said [*sic*] is dispensed a label showing the name, address, and registry number of the pharmacy name or initials of the pharmacist, the name of the

prescribing practitioner, the prescription identifying number, the name of the patient, the date dispensed, any directions as may be stated on the prescription and the name and strength and quantity of the drug dispensed. No person shall alter, deface, or remove any label so affixed.

The second statute I want to read to you is RSA 318-B:14, Authorized Possession of Controlled Drugs by Individuals. This, in relevant part, reads: An individual to whom or for whose use any controlled drug has been prescribed, sold, or dispensed by a practitioner or a pharmacist, may lawfully possess it only in the container in which it was delivered to him by the person selling or dispensing the same. And then in section two of that statute reads in Section C: Exceptions are made for those of non or reasonable [*sic*] containers, which are medication organizers to aid the person in carrying out the prescriber's directions.

The court began its jury charge with the specific elements of RSA 318-B:2 as charged, read RSA 318-B:13 and 14, and then explained the defendant's theory of defense, which was that the pills had been lawfully prescribed and that, therefore, he could not be guilty of unlawful possession. Because, viewed in their entirety, the trial court's instructions provided the jury with a clear and intelligible description of the applicable law in this case, we conclude that the instructions were not confusing or irrelevant.

We next address the defendant's argument that the evidence was insufficient to support the jury's finding of possession of a controlled drug under RSA 318-B:2. "To prevail in a challenge to the sufficiency of the evidence, the defendant bears the burden of proving that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt." *State v. Crie*, 154 N.H. 403, 406 (2006). "In reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation." *Id.* "Circumstantial evidence may be sufficient to support a finding of guilty beyond a reasonable doubt." *Id.* "Further, the trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom." *Id.* "It is well settled that the jury has substantial latitude in determining the credibility of witnesses." *State v. Gubitosi*, 152 N.H. 673, 680 (2005).

The defendant argues that the evidence demonstrated that he was in lawful possession of the diazepam because "the prescription bottle, was lawfully prescribed to Andreas Wischlburger, issued on 12/8/04 and contained eleven (11) Diazepam pills. The pill bottle itself accurately described the physician who prescribed the medication and provided the

required information as required by the Controlled Drug Act." He claims that such a defense arises out of RSA 318-B:6 (2004) entitled, "Possession Lawful." As explained further below, neither the facts nor the terms of RSA 318-B:6 support such a defense.

■ In the present case, Sergeant Ruel conducted a pat search of the defendant and discovered a prescription bottle in the defendant's front pocket. When Sergeant Ruel went to recover the bottle, the defendant reached into his pocket, removed the bottle and threw it away. When the prescription bottle was confiscated, it contained eleven tablets of diazepam along with 113 tablets of oxycodone. The defendant's name was not on the prescription bottle's label. Sergeant Ruel testified that when questioned about the prescription bottle, the defendant first stated that he didn't know where the drugs had come from, but later claimed that the prescription belonged to his wife and he would be in trouble for having it. Viewing this evidence and all reasonable inferences from it in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of being in unlawful possession of a controlled drug.

■ On appeal, the defendant argues that RSA 318-B:6 supports his theory of defense that he was in lawful possession of the diazepam because the drug was lawfully prescribed to a third party who allegedly authorized the defendant to possess it. However, in this case, RSA 318-B:6 is not a proper defense for the defendant because his possession of the diazepam does not satisfy the statute. RSA 318-B:6 provides in part: "Possession of or control of controlled drugs obtained as authorized shall be lawful if in the regular course of business, occupation, profession, employment, or duty of the possessor." The defendant urges us to interpret RSA 318-B:6 to authorize the incidental possession by third parties with the permission of the lawful possessor. However, the defendant never specifically raised this issue below in a motion to dismiss nor did he ask for a jury instruction on this issue. Assuming without deciding that this issue was properly preserved, we rule that RSA 318-B:6 cannot be construed as proposed by the defendant. RSA 318-B:6 does not contain the language suggested by the defendant. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Town of Hinsdale v. Town of Chesterfield*, 153 N.H. 70, 73 (2005). When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the

legislature might have said or add language that the legislature did not see fit to include. *Id.*

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.