Hillsborough-northern judicial district
No. 2005-625

THE STATE OF NEW HAMPSHIRE

v.

PETER JOHNSON

Argued: May 21, 2008
Opinion Issued: June 27, 2008

*Kelly A. Ayotte*, attorney general (*Diana E. Fenton*, attorney, on the brief, and *Susan P. McGinnis*, senior assistant attorney general, orally), for the State.

*Law Offices of Robert J. Moses*, of Amherst (*Robert J. Moses* on the brief and orally), for the defendant.

GALWAY, J. The defendant, Peter Johnson, appeals his conviction in Superior Court (*Lewis*, J.) for driving while intoxicated, second offense. *See* RSA 265:82 (2004) (repealed and replaced by RSA 265-A:2 (Supp. 2007)); RSA 265:82-b (2004) (repealed and replaced by RSA 265-A:18 (Supp. 2007)). The defendant argues that the trial court erred in its jury instructions and in its answer to a question from the jury during its deliberations. We affirm.

The record supports the following facts. On November 28, 2002, the defendant was stopped by Officer Brett Sullivan of the Peterborough Police Department. Sullivan suspected that the defendant had been drinking and requested that the defendant submit to field sobriety tests. After determining that the defendant failed the tests, Sullivan arrested him for driving while intoxicated.

Following his arrest, the defendant was transported to the police station. As part of the booking procedure, Sullivan reviewed the Administrative License Suspension (ALS) form with the defendant. Sullivan testified that he read the form to the defendant at least three times, but each time the defendant stated that he did not understand it. The defendant then read the ALS form for himself, but continued to profess that he did not understand it. While they were reviewing the ALS form, Sullivan repeatedly asked the defendant whether he would submit to a breath test, but the defendant would not make a decision. Also, during the time they reviewed the ALS form, the defendant, at his request, was permitted to use the restroom and to make two attempts at contacting an attorney. The defendant was unable to contact an attorney.

Sullivan testified that after approximately forty-five to fifty minutes of reviewing the ALS form with the defendant, he informed the defendant that he had five minutes more to decide whether to take the test or he would be deemed to have refused. At the end of the five minutes, Sullivan again asked the defendant to submit to a breath test, and the defendant refused. Sullivan testified that following his refusal, the defendant was sent for further processing, including fingerprinting and photographing, receiving his *Miranda* rights, meeting with the bail bondsman, and receiving bail. After this processing was completed, the defendant stated that he had changed his mind and would now take a breath test. The defendant, in contrast, testified that he informed Sullivan that he changed his mind after

just the photographing and fingerprinting, and that he believed the time between his refusal and his recantation was approximately six or seven minutes. Sullivan informed the defendant that because he had been released from police custody and was "on his way out the door," no test would be administered.

Prior to the close of trial, the defendant offered a proposed jury instruction on the issue of refusal to submit to chemical testing and recantation of that refusal. The trial court, however, gave its own instruction, to which the defendant objected. During deliberations, the jury submitted a question seeking clarification of the instruction regarding refusal and recantation. The defendant submitted a proposed answer which, over objection, the trial court rejected in favor of its own. The defendant was subsequently convicted, and this appeal followed.

■ On appeal, the defendant first contends that the trial court erred by not giving the instruction he proposed on refusal and recantation. The trial court, however, need not use the specific language requested by the defendant and has discretion to decide whether a particular charge will assist the jury in reaching a verdict. *State v. Dixon*, 144 N.H. 273, 282 (1999). Thus, we find no error in the trial court's decision not to give the precise instruction proposed by the defendant.

■ The defendant next contends that the instruction the trial court gave relative to recantation misstated the relevant law. "[T]he purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." *State v. Littlefield*, 152 N.H. 331, 333-34 (2005) (quotation omitted). When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case. *Id.* at 334. We determine if the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case. *Id.* Whether or not a particular jury instruction is necessary, and the scope and wording of the instruction, are within the sound discretion of the trial court, and we review the trial court's decisions on these matters for an unsustainable exercise of discretion. *Id.*

The trial court's instruction on refusal and recantation stated:

> Now, under New Hampshire law, every driver is deemed to have consented to chemical testing to determine the alcohol content in his or her system. The defendant may refuse to submit to such a test, but any such refusal to take the tests may be considered by you as, as to the driving under the influence of intoxicating liquor

charge, as evidence of guilt, provided you are satisfied beyond a reasonable doubt that he was advised that his refusal could be used against him in court.

You may also consider any reasons the defendant may have had for not taking the test that had nothing to do with guilt as bearing on the question of whether any refusal to take the test is evidence of guilt or not evidence of guilt.

It is up to you to determine whether any refusal by the defendant to take or perform the certain tests was because he feared results which might tend to prove that he was under the influence of intoxicating liquor, or because of other reasons that are inconsistent with any fear that the results might tend to prove he was under the influence.

Moreover, any refusal by a person to cooperate with the completion of the Consent Administrative License Suspension Form may not be the same as a refusal to submit to a chemical test. The State has the duty—has the burden to prove beyond a reasonable doubt that the defendant refused to submit to a chemical test. For you to consider any such refusal as evidence of guilt, you should consider all the circumstances you consider pertinent in this case in deciding whether the State has met its burden in that regard.

Furthermore, any person who has either refused, or been deemed a refusal, may recant; that is, change his mind and agree to submit to a chemical test, but only if he does so promptly, almost immediately, without a reasonable [*sic*] delay so that the test may be completed expeditiously. If, at that point, with such a recantation, the law enforcement officer declines or refuses to administer a test, then the defendant has not refused, nor can you consider the initial refusal as evidence of guilt.

Again, the burden of proof is on the State to prove by evidence beyond a reasonable doubt that such a recantation did not occur here; that is, a recantation that was prompt—promptly given almost immediately and presented without unreasonable delay so that the tests may be completed expeditiously.

The defendant contends that the trial court's use of the term "almost immediately" in its recantation instruction misled the jury and is inconsistent with *Harlan v. State*, 113 N.H. 194 (1973), which he argues is "the only available appellate guidance on recantation in New Hampshire." Additionally, the defendant contends that the law regarding recantation is "ripe for

consideration" because "the enabling statute applicable to this case, RSA 265:88-a (now 265-A:10) was not even the law in New Hampshire until 1983, a full 10 years after *Harlan* . . . ."

RSA 265:88-a (2004) (repealed and replaced by RSA 265-A:10 (Supp. 2007)), titled "Effect of Evidence of Refusal to Take Alcohol Concentration Test," states:

> If a person refuses to submit to a test as provided in RSA 265:84, such refusal may be admissible into evidence in a civil or criminal action or proceeding arising out of an act alleged to have been committed by that person while driving or attempting to drive a motor vehicle while under the influence of intoxicating liquor or any controlled drug.

Reviewing the trial court's instruction, we note that it informed the jury that it was the State's burden to prove the defendant was intoxicated and that it could consider the defendant's refusal to submit to testing as evidence of guilt, as well as whether the defendant refused to submit for some reason unrelated to guilt. The defendant does not challenge this portion of the trial court's instruction, and we have previously upheld similar instructions. *See State v. Parker*, 142 N.H. 319, 323-24 (1997).

The defendant challenges the trial court's instruction on the ground that it was contrary to the law as stated in *Harlan*. In *Harlan*, a driver arrested and charged with driving under the influence initially refused to submit to chemical testing. *Harlan*, 113 N.H. at 194-95. Eventually, she stated that she would submit to the test, but the officer refused to give it. *Id.* at 195. As a result of her refusal, the director of motor vehicles revoked her driver's license. *Id.* On appeal, we held that the driver's recantation was so delayed that it was ineffective to cure her earlier refusal. *Id.* at 197-98.

According to the defendant, *Harlan* establishes the circumstances under which a defendant may validly recant a refusal, and the trial court's instruction impermissibly modified the circumstances outlined there. Regardless of whether the defendant's reading of *Harlan* is correct, an issue upon which we express no opinion, we find *Harlan* inapplicable here. *Harlan* dealt with the propriety of penalizing a driver by revoking her license administratively for her refusal to submit to chemical testing when that driver had attempted to recant her refusal. By contrast, the issue here is whether, in a criminal trial, evidence that the defendant refused to submit to testing is properly before the jury and whether the jury was properly instructed about the manner in which to evaluate that evidence.

As the defendant himself acknowledges, it is the operation of RSA 265:88-a, an evidentiary statute, that governs the issues in this case. Here,

there is no argument that the defendant refused to submit to testing, evidence of which is expressly admissible under RSA 265:88-a. The defendant is at liberty to present evidence and argument that his refusal was for some reason other than guilt, or that he recanted and ought to have been given a test. Evidence that the defendant recanted his refusal, however, does not bar the admission of evidence of his refusal for consideration by the jury as the trial court instructed.

Whether the trial court may admit evidence of the defendant's refusal to submit to testing in a criminal trial for driving while intoxicated, and whether a refusal was recanted for purposes of determining whether the director of motor vehicles is authorized to revoke or suspend a driver's license, are different inquiries. Thus, *Harlan* does not apply in this instance. As *Harlan* is not applicable to the facts of this case, the defendant's argument that the trial court's instruction was erroneous in light of *Harlan* is not a basis upon which to reverse his conviction. We note also that the cases relied upon by the defendant in support of his position are, like *Harlan*, appeals by drivers from the revocation or suspension of their licenses. *See Lund v. Hjelle*, 224 N.W. 2d 552, 554 (N.D. 1974); *Larmer v. State*, 522 So. 2d 941, 942 (Fla. Dist. Ct. App. 1988); *Matter of Suazo*, 877 P.2d 1088, 1089 (N.M. 1994).

To the degree the defendant may be understood to argue that the trial court's instruction was erroneous because, irrespective of *Harlan*, it inaccurately informed the jury that any recantation had to be almost immediate to be valid, the defendant received a more favorable instruction than that to which he was entitled. Under the statute, the trial court need only have instructed the jury that it could consider evidence that the defendant had refused to submit to testing. *See* RSA 265:88-a. Also, as noted above, we have sustained instructions that informed the jury that it could consider any evidence the defendant refused for reasons other than consciousness of guilt, and that it is the State's burden to prove that the defendant refused. *Parker*, 142 N.H. at 323-25.

The trial court's instruction, however, informed the jury that if it determined that the defendant recanted "almost immediately," and that the officer still refused to perform the test, the defendant would not be deemed to have refused, and his refusal could no longer be considered evidence of guilt. Thus, the jury was told that it could not only consider the reasons the defendant may have refused that had nothing to do with guilt, but that an "almost immediate" recantation would effectively remove from its consideration any evidence that he had refused in the first place. Therefore, the instructions gave the defendant greater protection than required under the applicable law. Accordingly, even if the instruction was erroneous, "[g]iven

that the defendant received a more favorable instruction than he was entitled to, we cannot say that he was prejudiced by the court's charge." *State v. Schultz*, 141 N.H. 101, 105 (1996). For these reasons, we will not reverse the defendant's conviction on this ground.

The defendant next argues that the trial court erred in its answer to a question posed by the jury during its deliberations. The jury question stated:

Recant:

Clarification of "almost immediately"—is there something that means a certain length of time?

1 minute

5 minutes

Could after this time is [*sic*] arresting officer obligated to administer the test.

After reviewing the defendant's proposed response, the trial court declined to give it, and gave its own reply to the jury. The trial court responded that there was no certain length of time and that the jury should refer to the earlier instructions. The trial court also stated that if the jury determined that the recantation occurred "too late," then the attempt to recant would not prevent the jury from considering the refusal as evidence of guilt if it found that the defendant, in fact, refused. The defendant contends that the trial court's reply was non-responsive, legally erroneous and prejudicial to him.

First, to the extent the defendant argues that the trial court erred by not giving the response he had proposed, the "trial court is under no obligation to answer a jury's question with the specific language requested by a defendant; it is within the trial court's discretion to decide how best to aid the jury in its deliberations." *Littlefield*, 152 N.H. at 349.

We review the response actually given by the trial court to a question from the jury for an unsustainable exercise of discretion. *Id.* at 348. The defendant argues that although the trial court was correct in informing the jury that there was no specific time within which a recantation would be proper, it erred by referring the jury to the prior instruction, which, as noted above, he argues was erroneous. We reiterate our prior conclusion that the original instruction was proper, or to the degree it was not, it gave the defendant greater protection than he was entitled to under the applicable law. We, therefore, reject the defendant's challenge to the answer as being legally erroneous for the same reasons we rejected his challenge to the jury instruction.

■ The defendant further contends that the answer was not responsive. We do not agree. The jury sought to clarify whether "almost immediately" meant a particular time and the trial court informed the jury that it did not, a response the defendant agrees was accurate. Moreover, the trial court informed the jury that it should turn to the earlier instructions for further clarification of the circumstances under which a recantation would be valid. Because the trial court's response specifically directed the jury to refer to the written copy of the court's previous instructions, those instructions were incorporated into the court's response, and the jury is presumed to follow the instructions given by the trial court. *Id.*

Also, the jury sought clarification of the effect of an attempt to recant after the permissible time, and the trial court informed the jury that such a recantation did not prevent it from considering the refusal as evidence of guilt. Further, the trial court's answer referred the jury to the instructions which outlined how the jury should use the evidence if it determined that the recantation was valid, but the officer refused to give the test. Thus, the trial court's answer was responsive to the jury's inquiry.

Finally, the defendant argues that the trial court's response was prejudicial because it emphasized the impact of a refusal without also informing the jury that if the recantation was timely and the officer refused to administer a test, the lack of a test should not be considered as evidence of guilt. This issue, however, was specifically covered by the trial court's prior instructions to which the jury was directed, and which, therefore, were incorporated into its answer. *Id.* As such, we do not agree that the trial court's answer was prejudicial to the defendant. Indeed, as previously noted, the instructions were more favorable to him than necessary. For these reasons, we conclude that the trial court's answer to the jury's question was not an unsustainable exercise of discretion.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred; DUGGAN, J., dissented.

DUGGAN, J., dissenting. I agree with the majority that the trial court did not err in declining to give the precise instruction proposed by the defendant. However, because I believe that the trial court's instruction was misleading, I respectfully dissent.

RSA 265:88-a (2004) (repealed and replaced by RSA 265-A:10 (Supp. 2007)) dictates the effect a refusal to take an alcohol concentration test has upon a civil or criminal action or proceeding. It provides that if a person refuses to submit to a test as provided in RSA 265:84 (2004) (repealed and replaced by RSA 265-A:4 (Supp. 2007)), our "implied consent statute," *see*

*State v. Schneider*, 124 N.H. 242, 245 (1983), "such refusal may be admissible as evidence in a civil or criminal action or proceeding arising out of an act alleged to have been committed by that person while driving or attempting to drive a motor vehicle while under the influence of intoxicating liquor or any controlled drug," RSA 265:88-a. A refusal is admissible as evidence because it "supports an inference that the defendant sought to suppress evidence of his guilt." *State v. Lorton*, 149 N.H. 732, 735 (2003) (citations omitted); *see* Annotation, *Admissibility in Criminal Case of Evidence that Accused Refused to Take Test of Intoxication*, 26 A.L.R. 4TH 1112 (1983).

Where a defendant recants an initial refusal, however, the probative value of the inference may diminish, depending upon the circumstances of the particular case. The question presented here is whether the trial court accurately instructed the jury as to the circumstances in which it could find that a recantation negated the inference of guilt created by a refusal to take a chemical test under our implied consent statute.

In *Harlan v. State*, 113 N.H. 194, 195 (1973), we construed a prior version of our implied consent statute, *see* RSA 262-A:69-a (1972), which is essentially the same as the version relevant here, RSA 265:84. Although we interpreted the implied consent statute in the context of a license revocation proceeding, and in relation to the effect a refusal to consent to a chemical test would have in such a proceeding, *Harlan*, 113 N.H. at 194-95, I believe that the manner in which we construed the statute provides guidance on the issue presented here.

In *Harlan*, we held that our implied consent statute "contemplate[d] that the [chemical] test be administered *without unreasonable delay*." *Id.* at 196 (citations omitted; emphasis added). We found that "[c]learly implied in the statute is the requirement that one of its described tests *be submitted to and completed expeditiously*." *Id.* at 197 (quotation omitted; emphasis added). Therefore, we held that the initial refusal by the driver in that case "to submit to a breathalyzer test was not cured by her offer to take the test one hour later," *id.* at 197-98, and, as a result, the defendant was "forbid[den] . . . from being allowed to take [the] alcohol-level test after [s]he had initially refused to take it," *Schneider*, 124 N.H. at 245 (citing *Harlan*, 113 N.H. at 194). We noted, however, that "[w]e [we]re not faced with a situation where a defendant had *almost immediately* retracted his refusal and had been denied the test and had been told that his belated consent was unacceptable." *Harlan*, 113 N.H. at 198 (quotation omitted; emphasis added).

In this case, the trial court instructed the jury that a person may recant, "but *only if* he does so promptly, almost immediately, without [un]reasonable delay so that the test may be completed expeditiously." (Emphasis

added.) It repeated this instruction by stating: "Again, the burden of proof is on the State to prove by evidence beyond a reasonable doubt that such a recantation did not occur here; that is, a recantation that was prompt—promptly given almost immediately *and* presented without unreasonable delay so that the tests may be completed expeditiously." (Emphasis added.)

In the evidentiary context, the jury must determine whether a recantation occurred, whether it was valid, and what effect it has upon the inference of guilt that may be drawn from the initial refusal. *"Harlan* . . . indicates that *any significant* delay in taking a breathalyzer test may serve to deprive the State of an accurate indication of the driver's condition . . . ." *Schneider*, 124 N.H. at 245 (second emphasis added). Thus, *Harlan* requires that, under the implied consent statute, a chemical test be administered "without unreasonable delay," and "submitted to and completed expeditiously." *Harlan*, 113 N.H. at 196-97.

Consequently, because all that is required is that the test be administered "without unreasonable delay," where a defendant initially refuses but recants "without unreasonable delay," and the test may be "submitted to and completed expeditiously," a valid recantation could rebut the inference of guilt created by the defendant's initial refusal. Certainly, the inference of guilt created by a refusal would be substantially diminished in situations where a defendant recants "promptly" and "almost immediately." However, there may also be instances where a defendant does *not* recant "almost immediately" and "promptly," but *does* recant "without unreasonable delay." In such circumstances, the recantation could still serve to negate the inference of guilt created by the initial refusal. Thus, by instructing the jury that a person who has refused a test may recant "but only" in those instances where he does so "promptly [and] almost immediately," the trial court improperly narrowed the circumstances in which the jury could find that a recantation negated the inference of guilt created by the initial refusal. *See State v. Parker*, 142 N.H. 319, 324 (1997) ("Jury instructions are designed to give jurors neutral guidance on the law by which to evaluate testimony. Instructions are appropriate if they properly state the law and allow the jurors to exercise their own judgment in evaluating conflicting testimony." (citation omitted)).

Even if the defendant was not entitled to a recantation instruction under RSA 265:88-a, because the trial court chose to give such an instruction, the defendant was at the very least entitled to an instruction that accurately and clearly informed the jury as to the circumstances in which a recantation could negate the inference of guilt created by a valid refusal. *See State v. Drake*, 155 N.H. 169, 171 (2007) ("The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." (citation omitted)); *Jackson v. Morse*,

152 N.H. 48, 51 (2005) ("the trial court has a duty to instruct the jury completely and correctly on the law applicable to the case"). The trial court, however, misled the jury by instructing it that a person could recant "only if" he does so "promptly [and] almost immediately." Because the trial court failed to "fairly cover the issues of law of th[is] case," *Drake*, 155 N.H. at 171 (quotation omitted), I would find the trial court's instruction in error and reverse.