Strafford
No. 2005-485

THE STATE OF NEW HAMPSHIRE

v.

ANTHONY C. O'LEARY

Argued: May 10, 2006
Opinion Issued: July 19, 2006

*Kelly A. Ayotte*, attorney general (*Charles J. Keefe* and *David W. Ruoff*, assistant attorneys general, on the brief, and *Mr. Keefe* orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Anthony C. O'Leary, appeals his conviction of first degree murder, *see* RSA 630:1-a (1996), following a jury trial in Superior Court (*Mohl*, J.). He argues that the trial court erred when it instructed the jury that it could consider provocation manslaughter only after it unanimously acquitted him of first and second degree murder. We affirm.

The jury could have found the following relevant facts. On June 7, 2004, the defendant killed Treasure Genaw by strangling her and stabbing her nine times with a utility knife. The defendant met Genaw approximately eighteen months before the murder. They began dating in the fall of 2003 and became engaged in February of 2004. In April 2004, Genaw became pregnant by the defendant. The relationship ended in May; the defendant, however, continued to pursue her. He would call various places looking for her or would drive past her home to see if she was there.

On the day of the murder, the defendant told a co-worker that he had an appointment in Rochester at 7:00 p.m. that evening. He left work and arrived at Genaw's sister's home at approximately 5:15 p.m. A witness testified that he saw the defendant drive past the home twice before stopping. The defendant asked Genaw to go with him and talk. With Genaw driving, they left to get ice cream. They began to argue about their relationship and whether she was seeing someone else. They drove to a secluded wooded area, parked the car and continued to argue. During the argument Genaw attempted to take the car keys, but the defendant physically restrained her. She slapped the defendant and he grabbed her. The defendant claimed she then tried to burn him with a cigarette. He put her in a headlock in an effort to calm her, and she punched him in the leg because, according to him, she could not breathe. She then picked up a utility knife and cut the defendant's fingers in an effort to free herself from the headlock. She dropped the knife and the defendant retrieved it. He began to slash and stab her brutally with the knife while she struggled and pleaded for her life. Following the attack, the defendant moved Genaw to

the passenger's seat and drove to Maine. He drove down a dirt road in South Berwick, where he stopped and pulled her from the car while she continued to ask for help. He left her body in the tall grass and bushes. Before leaving, he took her license and a necklace she was wearing.

The defendant drove to Massachusetts, where he nearly collided with a Massachusetts State Police cruiser. At the time of his arrest, he and the front seats of his car were covered in blood, and he was actively bleeding from his fingers.

The grand jury indicted the defendant on one count of first degree murder. RSA 630:1-a. At trial, the defendant conceded that he killed the victim, but contended that he did so under circumstances that amounted to extreme provocation, and, thus, he committed manslaughter. *See* RSA 630:2, I(a)(1996). A jury found the defendant guilty of first degree murder. *See* RSA 630:1-a. This appeal followed.

On appeal, the defendant argues that the trial court erred by treating provocation manslaughter as a lesser-included offense of first degree murder and, as a result, erroneously instructed the jury that it could consider provocation manslaughter only if it first acquitted the defendant of first and second degree murder. Specifically, the defendant contends that, based upon the "acquittal first" instruction, the jury could not properly consider whether it should reduce the defendant's intentional murder of the victim to provocation manslaughter.

"The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case. When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case. We determine if the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case." *State v. Bortner*, 150 N.H. 504, 512 (2004) (quotations and citations omitted). The scope and wording of jury instructions are within the sound discretion of the trial court, *State v. Evans*, 150 N.H. 416, 420 (2003), and we review the trial court's decisions on these matters for an unsustainable exercise of discretion, *see State v. Poole*, 150 N.H. 299, 301 (2003).

The trial court instructed the jury on first degree murder, RSA 630:1-a, and the lesser-included offense of second degree murder, RSA 630:1-b (1996). The trial court also instructed the jury on provocation manslaughter. RSA 630:2, I(a). In an effort to structure the jury's consideration of those crimes, the court issued the following "acquittal first" instruction:

You should render a verdict on [first-degree murder] first. If you find that the defendant is not guilty on the indictment alleging first-degree murder in connection with the death of Treasure Genaw, you should consider whether the defendant is guilty of the similar but less serious crime of second-degree murder as I have defined that offense for you. You may consider whether the defendant is guilty of second-degree murder only if you first find him not guilty of first-degree murder. Only if you find the defendant not guilty of second-degree murder may you go on to consider the lesser-included offense[s] of [provocation and reckless] manslaughter.

The defendant argues that because the instruction informed the jury it could consider provocation manslaughter only if it first acquitted him of two more serious offenses, it unfairly subordinated his defense. The State contends that the jury instructions were proper, but, in the alternative, that any error was harmless beyond a reasonable doubt. Specifically, the State contends that the defendant received a more favorable charge than he was entitled to because the record in this case did not support a provocation manslaughter instruction.

In *State v. Taylor*, we approved an acquittal first instruction with respect to reckless manslaughter. *State v. Taylor*, 141 N.H. 89, 94 (1996). We also discussed a proper method for giving a provocation manslaughter instruction in first and second degree murder trials. The trial court in *Taylor* instructed the jury:

[I]n your deliberations you should first consider whether or not the defendant is guilty of first degree murder. If you so find, then you should consider whether or not that charge should be reduced to manslaughter based on provocation. If you find the defendant not guilty of first degree murder, then you should go on to consider whether or not he is guilty of second degree murder. If you so find, then you must consider whether or not that charge must be reduced to manslaughter based on ... provocation .... If you find the defendant not guilty of first degree murder or second degree murder, then you should go on to consider whether he is guilty of manslaughter based on recklessness.

*Taylor*, 141 N.H. at 94. We noted that this instruction required the jury to consider the defendant's provocation defense regardless of the outcome on the murder charge. *Id.* at 96. In contrast, the trial court in this case treated provocation manslaughter as a lesser-included offense to murder

by giving a pure "acquittal first" instruction. This was error. Nonetheless, after reviewing the record, we conclude that the State has satisfied its burden of proving that this error was harmless beyond a reasonable doubt.

> The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

*Rose v. Clark*, 478 U.S. 570, 577 (1986) (citation and quotation omitted). There are instances, however, when the error is so prejudicial that reversal is required "without regard to the evidence in a particular case." *State v. Williams*, 133 N.H. 631, 634 (1990). In *Williams*, we explained that "only such constitutional errors as necessarily render a trial fundamentally unfair require reversal without regard to the evidence in the particular case." *Id.* (quotation and ellipsis omitted). Errors that partially or completely deny a defendant the right to the basic trial process, such as the complete denial of a defendant's right to counsel, or adjudication by a biased judge, rise to the level of fundamental unfairness, thereby obviating consideration of the harmless error doctrine. *See Williams*, 133 N.H. at 634; *see also State v. Soucy*, 139 N.H. 349, 352 (1995). Generally, however, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose*, 478 U.S. at 579.

To establish that an error was harmless, the State must prove beyond a reasonable doubt that the error did not affect the verdict. *State v. Etienne*, 146 N.H. 115, 118 (2001). "An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." *State v. Pelkey*, 145 N.H. 133, 137 (2000) (quotation omitted).

The State contends that the evidence in this case, taken in a light most favorable to the defendant supports the conclusion that no reasonable jury could have found the defendant guilty of provocation manslaughter even if the trial court instructed the jury as the defendant requested. We agree. The evidence of the defendant's guilt of first degree murder is of an overwhelming nature, and the jury charge was inconsequential in relation to the strength of the evidence of guilt of first degree murder.

While the defendant and Genaw argued in her car, with Genaw in the driver's seat and the defendant in the passenger's seat, she reached for the keys. The defendant restrained her from doing this; she then slapped the defendant, and the defendant grabbed her. As a result of this physical confrontation, according to the defendant, she attempted to burn him with a lit cigarette. The defendant put her in a headlock, according to his own confession, in an effort to calm her down, not because he was upset about being slapped or about the attempted cigarette burn. She could not breathe because the defendant was choking her, and again according to the defendant, she grabbed his utility knife and cut his fingers because she could not breathe. The defendant released her from the headlock and grabbed her by the throat with his left hand. The bruising on Genaw's throat and broken blood vessels in her eyes corroborate that the defendant strangled her in this manner. The defendant stabbed her in the left eye and sliced down. She screamed and tried to get out of the car, but the defendant held her by the throat and refused to let her escape. He then sliced her throat severing her jugular vein. Genaw told the defendant that she loved him and would do anything for him. He believed that she was attempting to trick him, so he then slashed her stomach. She slouched down in the driver's seat of the car, again told the defendant that she loved him and she was sorry and asked him to help her. In response, the defendant said, "[I]t's too late." He stabbed her four times in the chest, severing one of her ribs and puncturing one of her lungs. After the defendant stopped, Genaw began twitching and gurgling. The defendant then got out of the car and pulled her from the driver's seat. According to the defendant's own confession, she continued to gasp for help until "her eyes rolled in the back of her head." Following his statement to the Massachusetts State Police, the defendant called his mother to tell her he had confessed to murdering Genaw in a jealous rage.

We have said that a requested instruction on a party's theory of defense must be given if such theory is supported by some evidence. *See State v. Hast*, 133 N.H. 747, 749 (1990). Where, however, there is simply no evidentiary basis to support the theory of the requested jury instruction, the party is not entitled to such an instruction. *See id.* In the present case, we find no evidence that would entitle the defendant to the provocation manslaughter instruction.

Indeed, the evidence established beyond a reasonable doubt that the defendant was not acting under the influence of extreme mental or emotional disturbance caused by extreme provocation. This is clearly demonstrated by the defendant telling Genaw that "it [was] too late," before he inflicted the four wounds to her chest. Moreover, following his

confession, he telephoned his mother and told her he killed Genaw in a jealous rage, not because she had tried to burn him or attack him.

■ No reasonable jury could have found that there was sufficient provocation warranting a finding of provocation manslaughter. In *State v. Smith*, 123 N.H. 46, 49 (1983), we recognized the continuing validity, under the Criminal Code, of the common-law rule that measures provocation under a reasonable person standard. *Smith*, 123 N.H. at 49. According to this rule, provocation is adequate only if it is so severe or extreme as to provoke a reasonable person to commit the act. *State v. Little*, 123 N.H. 433, 436 (1983). Although there is evidence in the record that the defendant's relationship with the victim had deteriorated and that he told his mother that he killed her in a jealous rage, he does not argue that these circumstances amounted to adequate provocation. *See id.* at 435. Instead, he contends that the provocation at issue here was an attempted cigarette burn on the defendant's arm, and the cut to his fingers. The jury, however, regarding the attempted cigarette burn, could not have concluded that such a minor assault, which inflicted no injury, would be sufficient to cause a reasonable person to kill another out of passion or in the anger of the moment. Furthermore, according to the defendant's own confession, the victim while struggling, reached for a utility knife and cut the defendant's fingers in an effort to free herself from the headlock. According to the defendant, he then "loosened [his] grip . . . around her neck . . . [a]nd she dropped the knife [on] the seat." Again, according to the defendant, "[his] hand [slid] up from being in a headlock with his elbow to holding her neck [around her esophagus]. And [he] turned her face towards [him] and [he] jabbed her in her left eye," and down her cheek. The defendant continued to attack the victim. His actions in response to her actions were so disproportionate that the only reasonable conclusion a jury could reach was that he was guilty of murder. *See People v. Siverly*, 551 N.E.2d 1040, 1044 (Ill. App. Ct. 1990) (the provocation must be proportionate to the manner in which the accused retaliates; use of a deadly weapon is evidence of a disproportionate response); *People v. Matthews*, 314 N.E.2d 15, 19 (Ill. App. Ct. 1974) (slight provocation will not be adequate since the provocation must be proportionate to the manner in which the accused retaliated; therefore, if accused, on slight provocation, attacked with violence out of all proportion to provocation and killed victim, crime is murder); *People v. Hawthorne*, 692 N.W.2d 879, 887 (Mich. Ct. App. 2005) (defendant's use of gun when challenged to fist fight was disproportionate response thereby excluding voluntary manslaughter instruction), *rev'd on other grounds, People v. Hawthorne*, 713 N.W.2d 724 (2006); *State v. Darrian*, 605 A.2d 716, 722 (N.J. Super. Ct. App. Div. 1992) (provocation

must be proportionate to manner of retaliation; therefore, violent attack in response to slight provocation is murder). In light of our continued adherence to the common-law rule, we agree with the State, and find that any error in the trial court's instruction was harmless.

 As noted above, provocation is measured under a reasonable person standard, and thus is adequate only if it is so severe or extreme as to provoke a reasonable person to commit the act. *Little*, 123 N.H. at 436. There was no evidence of such severe or extreme behavior at trial. *Id.* Therefore, the defendant received an instruction to which he was not entitled. Given the evidence, the trial court's error did not affect the verdict. *See State v. Schultz*, 141 N.H. 101, 105 (1996) (where the defendant received a more favorable instruction than that to which he was entitled, we cannot say that he was prejudiced by the court's charge). In light of this disposition, we need not consider the parties' remaining arguments.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.