Carroll
No. 2007-500

## THE STATE OF NEW HAMPSHIRE

v.

## ANTHONY BALLIRO

Argued: September 16, 2008
Opinion Issued: October 30, 2008

*Kelly A. Ayotte*, attorney general (*Thomas E. Bocian*, attorney, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Anthony Balliro, appeals a ruling by the Superior Court (*Fitzgerald*, J.) denying a jury instruction for the justified use of deadly force to "prevent an attempt by the trespasser to commit arson." *See* RSA 627:7 (2007). We affirm.

The jury could have found the following relevant facts. The defendant stabbed Steven Hayes five times on July 5, 2006, causing his death. On this same day, emergency personnel responded to fires at the defendant's restaurant and his apartment building. At trial, the State and the defendant offered disparate accounts of the events leading up to the stabbing and the two fires.

The State portrayed the defendant's rapidly deteriorating circumstances at the time of the stabbing and emphasized his past threats of violence and arson. He had been asked to move out of his apartment due to unpaid rent, and his restaurant — Moose Tracks — was the source of unpaid bills and unmet payroll obligations, including wages due to Hayes, who was an employee of the restaurant.

At the time of the stabbing, Moose Tracks' business was in substantial decline. The defendant and his business/romantic partner had recently parted and, as a result, the defendant was depressed. Also, the defendant and Hayes had recently clashed over their shared interest in a different woman. Several witnesses testified that this had precipitated a prior argument and threats by the defendant in the weeks leading up to the stabbing, including threats to kill Hayes and to burn down the restaurant.

According to the State, the defendant arranged to meet Hayes at the restaurant on the day of the stabbing ostensibly to pay his back wages. The defendant stabbed him with a ten-inch fillet knife in the chest, side, armpit and back.

Emergency responders testified that, upon arriving at Moose Tracks, they discovered fires in the restaurant's restrooms. The fire investigator testified that these fires were intentionally set. A separate fire was also intentionally set within the restaurant's upstairs office. At least four different areas within the defendant's apartment were also intentionally ignited. The medical examiner testified that Hayes was dead before the fire at the restaurant started.

The State contended that the defendant set the fires at his restaurant and apartment building to destroy the knife used in the stabbing, and then fled in Hayes' automobile until it had a flat tire. The defendant then went

to an acquaintance's home in Conway, asked the acquaintance to obtain a bus ticket, and explained that he had done something he should not have done by starting a fire in Moose Tracks' office. The acquaintance contacted the police, who, upon arrival, placed the defendant under arrest. At the time of arrest, the defendant exhibited no defensive wounds or marks on his body.

The defense claimed that the homicide was justified. It stressed that Hayes was a flagging employee, unstable, in part, because of a failed relationship, hostile towards the defendant due to jealousy and unpaid wages. Some witnesses suggested that Hayes could be violent or aggressive, or that the combination of Hayes and the defendant was volatile.

The defendant testified that, earlier on the day of the stabbing, he and Hayes had an argument at Moose Tracks and Hayes had stormed out. The defendant later noticed Hayes' car outside the restaurant, went to Moose Tracks to investigate, heard rumbling upstairs, grabbed a knife from the kitchen, and discovered a person crouched in the office doorway upstairs. The person came towards him and he realized it was Hayes, who seemed "outta control."

The defendant testified that he noticed flames for the first time as Hayes moved towards him. Upon noticing the flames, "[his] first thought was just to get outta there" and "[his] instinct was just to get away." According to the defendant, the two then collided and the defendant defensively pushed and struck Hayes. Hayes grabbed him and the defendant struck Hayes at least two more times, eventually fleeing the scene and dropping the knife somewhere in the kitchen. The defendant took Hayes' car and drove towards Conway until experiencing a flat tire.

At the close of evidence, the defendant requested jury instructions on three theories of justifiable homicide: self-defense, defense against burglary and defense of premises against arson. The trial court gave instructions on self-defense and defense against burglary, but not defense of premises against arson. The court gave two reasons for denying the instruction. The first was the lack of sufficient evidence for a reasonable jury to conclude that the defendant justifiably acted to "prevent an attempt by the trespasser to commit arson." RSA 627:7. The second was that the defendant, who testified that he arrived only after the fire had begun and acted only to flee, was not entitled to the instruction because RSA 627:7 affords a justification only to prevent a not-yet-ignited fire. The defendant was ultimately convicted of one count of first degree murder, *see* RSA 630:1-a, I(a) (2007), and two counts of arson, *see* RSA 634:1 (2007). This appeal followed. On appeal, the defendant argues that both rationales for denying the requested instruction are flawed and that the failure to give the RSA 627:7 instruction constitutes reversible error.

We first address the parties' arguments concerning the proper legal construction of RSA 627:7. "We review the trial court's interpretation of statutes *de novo.*" *Petition of State of N.H. (State v. Laporte)*, 157 N.H. 229, 231 (2008). "This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *Id.* "In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." *Id.* "Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation." *Id.* "We do not consider legislative history to construe a statute that is clear on its face." *Id.* "Finally, we do not strictly construe criminal statutes, but rather construe them 'according to the fair import of the terms and to promote justice.'" *Id.* (quoting RSA 625:3 (2007)).

RSA 627:7 provides, in pertinent part:

> A person in possession or control of premises . . . is justified in using . . . deadly force . . . when he reasonably believes it necessary to prevent an attempt by the trespasser to commit arson.

RSA 627:7.

The defendant argues that the trial court committed legal error by interpreting the language permitting deadly force "to prevent an attempt by the trespasser to commit arson" as affording a defense only when the use of deadly force precedes ignition of the fire. The defendant maintains that the trial court read the word "attempt" out of the statute. He points out that the word "attempt" is defined elsewhere in the Criminal Code as a "substantial step toward the commission of the crime." RSA 629:1, I (2007). The defendant argues that when RSA 627:7 and RSA 629:1, I, are read together, they lead to the illogical result that a person loses the justification for deadly force "not at the moment the fire starts, but rather earlier, when the would-be arsonist has taken the substantial step that establishes culpability for attempted arson." Thus, the defendant maintains that RSA 627:7 justifies the use of deadly force to prevent arson after the ignition of a fire, to the extent necessary to salvage life and property still at risk after the completed arson.

In contrast, the State argues that the trial court correctly construed RSA 627:7 by ruling that deadly force is justifiable only preceding the completed crime of arson, and not afterwards. It argues that the word "attempt" in RSA 627:7 is properly construed according to its plain meaning. The State also looks to the plain meaning of the word "prevent" to support its construction. Finally, it argues that the legislature intentionally drafted RSA 627:7 to justify deadly force only prior to the setting of a fire, and not after, given that other statutes, both in New Hampshire and elsewhere,

expressly distinguish between the period preceding a crime and the period during a crime. *See, e.g.*, RSA 627:4, II(c) (2007) (use of deadly force permissible when aggressor is "committing or about to commit kidnapping or a forcible sex offense").

We decline to address the parties' statutory construction arguments insofar as they dispute the precise moment when the justified use of deadly force "to prevent an attempt by the trespasser to commit arson" is no longer available. RSA 627:7. Whenever the justification may be lost, there was insufficient evidence in the record for the jury to reasonably conclude that the defendant stabbed Hayes "to prevent an attempt by [Hayes] to commit arson." *See* RSA 627:7. Accordingly, we find that the trial court did not engage in an unsustainable exercise of discretion by denying the requested instruction.

 The defendant was entitled to the requested jury instruction only "if there [was] some evidence to support a rational finding in favor of that defense." *State v. Ayer*, 154 N.H. 500, 514 (2006), *cert. denied*, 128 S. Ct. 63 (2007). "By 'some evidence,' . . . there must be more than a minutia or scintilla of evidence." *Id.* (quotation omitted). "Where . . . there is simply no evidentiary basis to support the theory of the requested jury instruction, the party is not entitled to such an instruction, and the trial court may properly deny the party's request." *Id.* (quotation omitted). We will search the record for evidence supporting the defendant's requested jury instruction. *State v. Vassar*, 154 N.H. 370, 373 (2006). We will uphold the denial of a requested jury instruction absent an unsustainable exercise of discretion. *See id.*; *see also Ayer*, 154 N.H. at 514.

The defendant argues that, based upon his account of the events immediately preceding the stabbing, "[a] jury could [reasonably] find that [he] sought to escape the office in order to take action to save the restaurant from the fire." Furthermore, he argues that the evidence that he intended to continue running Moose Tracks provides a rational basis for the jury to conclude that he acted within the scope of the justification for the use of deadly force under RSA 627:7.

██ We disagree. The defendant's own testimony reveals that, upon discovering Hayes in the restaurant office, his only instinct was to escape. In response to the question "[W]hy did you [stab Steven Hayes?]," the defendant said that "[his] intentions just w[ere] to get away from what was going on in the office" and that "[his] only intention was to . . . get away . . . from what was happening at that moment in the restaurant." Thus, by his own admission, the defendant stabbed Hayes with the sole intention of fleeing the premises. There was no evidence in the record suggesting that

the defendant stabbed Hayes and fled in order to prevent further arson or extinguish the fires which he stated had already begun when he arrived.

The defendant also points to his testimony that he had made arrangements to keep Moose Tracks operating by borrowing money from his parents and, if necessary, having them and his brothers move there for the summer to help him run the restaurant. This is but a mere "scintilla of evidence," *Ayer*, 154 N.H. at 514 (quotation omitted), and a jury could not reasonably infer, based entirely upon this testimony, that, in stabbing Hayes, the defendant acted justifiably under RSA 627:7.

Accordingly, because the record contains insufficient evidence to conclude that the trial court committed an unsustainable exercise of discretion by denying the requested instruction, we affirm its ruling.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.