Hillsborough-southern judicial district
No. 2008-883

THE STATE OF NEW HAMPSHIRE

v.

JOSE HERNANDEZ

Argued: October 8, 2009
Opinion Issued: November 17, 2009

*Orville B. Fitch, II,* acting attorney general (*Thomas E. Bocian,* assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein,* deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, Jose Hernandez, appeals his conviction by a jury of one count of aggravated felonious sexual assault. *See* RSA 632-A:2, I(l) (2007). He contends that the Superior Court (*Lynn,* C.J.) erroneously instructed the jury that the police may deceive a suspect during questioning and impermissibly allowed a detective to testify while wearing a ski mask. We affirm.

*I. Background*

The jury could have found the following relevant facts. The defendant is the victim's step-father. On the evening of September 21, 2007, the victim, who was then twelve years old, two of her sisters, and her young cousins were at home with the defendant. The victim's mother and other siblings were at a local restaurant.

At some point, the victim's sisters went out to the porch while the victim and the defendant watched television in the living room. When one of the

victim's young cousins began to cry in the bedroom, the victim went to console her and eventually lay down next to her on a bed. The defendant came into the bedroom, pulled down the victim's pants and his own, lay on top of her, and penetrated her vagina with his penis. One of the victim's sisters walked into the bedroom and saw the defendant on top of the victim. The defendant got off the victim and pulled up his pants. The victim's other sister ran to the restaurant to get their mother and other siblings. When the rest of the family arrived at the home, the victim's brother punched her when she refused to tell him what had happened.

The police were then called and, when they were told what had happened, had the victim taken to the hospital in an ambulance. The defendant left the home, but later called the police and asked to speak to an investigator. He was eventually brought to the police station for an interview. His interviewers were Nashua Police Officer Josue Santiago and Detective Robert Page.

The defendant initially denied any misconduct. The police then lied to the defendant, telling him that his hairs would be found on the victim's body and that tests would prove that he had penetrated her. They also told him that he would be imprisoned and that their supervisor wanted to charge him with forcing the victim to have intercourse. Eventually, the defendant told the police that when he went to check on the child crying in the bedroom, the victim hugged him from behind, put her hands down his pants and began to rub his penis. He said that he got on top of the victim and she told him that because she had had sex before, it was all right for him to have sex with her. He told the police that the victim began to rub his penis on her vagina and that he penetrated her three or four times before the victim's sister entered the room. The interview was videotaped and transcribed.

At trial, the State sought permission for Page to wear a ski mask while testifying. The State explained that when Page interviewed the defendant, he was assigned to the Youth Services Division; he was now in the Narcotics Division, working undercover. The State contended that the mask was necessary to protect Page's "personal safety and identity." The defendant objected on the ground that the mask impaired his rights under the Federal and State Confrontation Clauses. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. The defendant also argued that the mask was unnecessary because the jury had already seen Page's face when they watched the videotaped interview, and the trial was only sparsely attended. The trial court allowed Page to testify while wearing the mask, finding that the State's purpose was valid and that the mask did not substantially interfere with the jury's ability to assess Page's credibility.

Before Page testified, the court instructed the jury that it was allowing him to testify while wearing a mask because, as he now worked in an

undercover capacity, the mask was necessary to preserve his ability to continue to operate in that capacity and for his safety. The court specifically told the jury that Page was not "entitled . . . to have extra credibility or diminished credibility because of the fact that he's wearing a mask" and that the jury was to assess his credibility "the same way as you would any other witness."

Near the end of the case, the court held a conference to discuss proposed jury instructions; the defendant objected to the court's instruction about how the jury should evaluate whether his confession was voluntary. He contended that by telling the jury that "law enforcement authorities are permitted under the law to resort to subterfuge and deception," the court was "vouching for police tactics in th[e] case." The defendant conceded that the court's instruction accurately stated the law, but argued that it "create[d] a bias as the Court is vouching for police practices in this case." Instead, the defendant contended, it should be "up to the jury to decide whether the police acted appropriately or not given all the circumstances."

The court overruled the objection, and, ultimately, instructed the jury as follows with respect to the defendant's confession:

> Evidence has been presented indicating that the defendant made a confession concerning the crime charged. There are two important legal principles which apply to your consideration of this evidence. The first one is that under the law a person may not be convicted of a crime solely on the basis of an uncorroborated confession or admission made by the person. However, this does not mean that the State is required to prove the crime or crimes charged by evidence independent of the confession. What it does mean is that there must be substantial independent evidence to establish that the confession is trustworthy.

> In deciding whether the confession is trustworthy, you . . . may consider such things as whether there is other evidence that the crime charged did in fact occur, whether the defendant did or did not have a motive to commit the crime, whether the defendant did or did not have the opportunity to commit the crime, whether the confession is consistent or inconsistent with other evidence concerning the manner in which the crime allegedly was committed, and all other facts and circumstances as shown by the evidence.

> The second legal principle that applies to the confession concerns its voluntariness. You should carefully examine the circumstances surrounding the confession to decide whether it was made freely and voluntarily. The burden is upon the State to prove

beyond a reasonable doubt that the confession was made freely and voluntarily. If you find beyond a reasonable doubt that the defendant gave a confession freely and voluntarily, then you may use the confession together with all the other evidence presented in the case in deciding upon a verdict.

However, if you are not satisfied beyond a reasonable doubt that the confession was made freely and voluntarily, then you must not consider the confession in reaching a verdict. For the defendant's confession to be free and voluntary, . . . it must have been made by the defendant with an understanding of what he was doing and saying. And the confession must not have resulted from conduct of the police such as threats, force or physical or psychological coercion which overbore the defendant's free will.

In deciding whether the confession was voluntary, you should consider all the circumstances under which the confession allegedly was made, including whether the defendant was advised of his rights before he was interrogated by the police; the nature of the conversation between the defendant and the police; the time and place where the confession occurred; the tone, manner and length of the questioning of the defendant; the number of persons present; the physical and mental condition of the defendant during the questioning; the age, education, experience, character and intelligence of the defendant; and all other circumstances as shown by the evidence.

You also have heard evidence indicating that during questioning the police officers made false statements to the defendant concerning the existence or possible existence of other witnesses or evidence against the defendant. Law enforcement authorities are permitted under the law to resort to subterfuge and deception or the providing of false information in the course of questioning . . . a suspect as long as these tactics do not have the effect of overriding the suspect's free will so as to render the suspect's confession involuntary. You should consider the nature and circumstances of any false information provided to the defendant by the officers in deciding whether the State has proven beyond a reasonable doubt that the defendant's confession was voluntary.

## II. Discussion

### A. Jury Instruction

The defendant first argues that the trial court's instruction that the police are permitted by law to engage in deception was erroneous. The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case. *State v. Drake*, 155 N.H. 169, 171 (2007). When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case. *Id.* We determine whether the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case. *Id.* Whether a particular jury instruction is necessary, and the scope and wording of jury instructions, are within the sound discretion of the trial court, and we review the trial court's decisions on these matters for an unsustainable exercise of discretion. *Id.* at 172.

While he acknowledges that the challenged instruction accurately stated the law, the defendant argues that it impermissibly invaded the exclusive fact-finding province of the jury. *See State v. Ross*, 141 N.H. 397, 399, 400 (1996). He likens the instruction in this case to that in *Ross*. In *Ross*, the defendant was convicted of aggravated felonious and misdemeanor sexual assault. *Id.* at 398. The complainant brought a civil claim against him in addition to participating in the criminal case. *Id.* at 399. At trial, the defendant contended that the complainant "was pursuing the criminal case . . . to strengthen her civil claim." *Id.* The trial court instructed the jury that "if the complainant was in fact sexually assaulted by the defendant as she alleges, then she has every right to bring a private civil lawsuit against him." *Id.* (quotation and brackets omitted). The trial court also instructed the jury that "it is not unusual for an alleged wrongful act to give rise to both a criminal prosecution and a related civil lawsuit." *Id.* (quotation and brackets omitted). On appeal, the defendant conceded that the former instruction was proper, but argued that the latter instruction amounted to an improper finding of fact that dual proceedings are not unusual, and, thus, invaded the jury's province. *Id.* He argued that his ability to attack the complainant's credibility was compromised by the challenged instruction. *Id.*

We agreed: "The trial judge's instruction constituted a factual finding on whether dual proceedings were commonplace and therefore eclipsed the permissible preceding statement of pure law." *Id.* This was improper, we explained, because "[a] juror might well have interpreted the court's

statement to mean that the complainant's pending civil suit had no bearing on her credibility as a witness in the criminal trial as a matter of law." *Id.* at 399-400.

The defendant makes an argument similar to that of the defendant in *Ross*. He contends that his ability to attack the credibility of the police, and the jury's ability to assess the reliability of his confession, were compromised by the trial court's instruction that the police are permitted by law to deceive suspects provided that their deception does not overbear the suspect's will.

The instruction at issue differs, however, from the instruction in *Ross*. While the instruction in *Ross* constituted a factual finding by the court that dual proceedings "are not unusual," the challenged instruction in this case is a pure statement of law. The court instructed the jury that, as a matter of law, the police are allowed to deceive suspects provided that the deception does not overbear the suspect's will. Whether the deception, in fact, overbore the defendant's will was for the jury to decide. The trial court made no factual finding on this issue. Moreover, the court specifically instructed the jury that, when assessing the trustworthiness of the defendant's confession, it was to consider "*all* . . . facts and circumstances as shown by the evidence." (Emphasis added.) Contrary to the defendant's assertions, nothing in the trial court's instructions precluded the jury from considering the fact that the police lied to him either in determining voluntariness or for other purposes, such as to assess their overall credibility, or the reliability of the confession.

The defendant criticizes the trial court for treating "the subject of the police's prerogative to lie to suspects more expansively than . . . the more recent treatment afforded the topic in the [New Hampshire] Bar Association's draft criminal instruction." He urges the court to exercise its supervisory authority to adopt the draft criminal jury instruction. Given that he has conceded, for the purposes of this appeal, that the trial court's instruction accurately stated the law, we decline his invitation.

## B. Ski Mask

The defendant next argues that the trial court violated the State and Federal Confrontation Clauses when it allowed Page to testify while wearing a ski mask. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. Because we decide cases upon constitutional grounds only when necessary, we begin by addressing the State's claim of harmless error. *State v. Wall*, 154 N.H. 237, 244 (2006). For the purposes of this analysis, we

assume, without deciding, that allowing the detective to testify while wearing a ski mask violated the defendant's constitutional rights. *See id.* at 245.

■ An error is harmless only if it is determined, beyond a reasonable doubt, that the verdict was not affected by the error. *State v. O'Maley*, 156 N.H. 125, 129 (2007), *cert. denied*, 129 S. Ct. 2856 (2009). The State bears the burden of proving that an error is harmless. *Id.* An error may be harmless beyond a reasonable doubt if the alternative evidence of a defendant's guilt is of an overwhelming nature, quantity or weight and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. *Id.* In making this determination, we consider the alternative evidence presented at trial as well as the character of the inadmissible evidence itself. *Id.* at 129-30. In this case, any error in allowing the detective to testify while wearing a ski mask was harmless beyond a reasonable doubt. *See Coy v. Iowa*, 487 U.S. 1012, 1021 (1988) (explaining that denial of face-to-face confrontation is subject to harmless error analysis); *State v. Hall*, 152 N.H. 374, 379 (2005) (applying harmless error review to admission of evidence in violation of State and Federal Confrontation Clauses).

■ For the jury to convict the defendant of aggravated felonious sexual assault, the State had to prove, beyond a reasonable doubt, that he knowingly engaged in sexual penetration of the victim, who was less than thirteen years old at the time, by inserting his penis into her vagina. *See* RSA 632-A:2, I(l); RSA 632-A:1, I-b (2007), V(a) (2007) (amended 2008). The alternative evidence of the defendant's guilt was overwhelming.

The victim's sister testified that she saw the victim on the bed with her pants and underwear down and the defendant on top of her with his pants below his knees. She also testified that while she could not be sure that the defendant's penis was inside of the victim, it appeared to her that he and the victim were having sex. The victim's sister described the defendant's penis as "hard" and "wet." When she confronted him, the defendant told the sister that "he didn't want to do it," but that the victim had "c[o]me on to him" by "kissing him and touching him." The victim's sister testified that the defendant apologized and then said, "I know I'm going to pay for what I did."

The victim testified that she felt the defendant climb on top of her and put his penis in her vagina while she was lying down on a bed with her sister's baby. She said that she tried to push him off and was too scared to scream for her sister.

When interviewed by the police, the defendant confessed to penetrating the victim with his penis. He told the police that the victim grabbed him

from behind and fondled his penis. He said that the victim told him "not to worry" because she had had sex before. His penis penetrated the victim's vagina no more than three times before the victim's sister walked in.

■ We conclude that the above evidence that the defendant had sexual intercourse with the victim, who was less than thirteen years old at the time, was overwhelming. The detective's testimony, in relation to this evidence, was inconsequential and cumulative. The masked detective testified about the police interview of the defendant. Before he took the stand, the jury had observed a videotape of the interview, read a transcript of it, and heard Santiago's testimony about it. The masked detective's testimony was merely cumulative of the other evidence the jury had regarding the interview.

Based upon all of the above, we hold that the State has met its burden of proving that any error in allowing the detective to testify while wearing a ski mask was harmless beyond a reasonable doubt. Although any error in this case in allowing the detective to testify was harmless beyond a reasonable doubt, we take this opportunity to provide instructions to trial courts about allowing prosecution witnesses to testify while wearing disguises, such as masks.

■ Part I, Article 15 of the State Constitution affords an individual accused of a crime the right "to meet the witnesses against him face to face." The Sixth Amendment to the Federal Constitution grants a criminal defendant the right "to be confronted with the witnesses against him." Under both constitutions, a criminal defendant has the right "physically to face those who testify against him and the right to conduct cross-examination as well as ensuring that the witness will give his statements under oath and before the jury so it may observe the demeanor of the witness in making his statement." *State v. Peters*, 133 N.H. 791, 794 (1991) (quotations, citations, ellipses and brackets omitted); *see Coy*, 487 U.S. at 1017; *Maryland v. Craig*, 497 U.S. 836, 851 (1990). Under our own as well as the United State Supreme Court's precedent, "the confrontation clause reflects a preference for face-to-face confrontation at trial," which "must occasionally give way to considerations of public policy and the necessities of the case." *Peters*, 133 N.H. at 794 (quotations and emphases omitted); *Craig*, 497 U.S. at 849.

■ In *Coy*, 487 U.S. at 1014, 1021-22, the United States Supreme Court ruled that placing a large screen between the defendant and the witness stand during the testimony of the young girls who accused him of sexually assaulting them violated the Federal Confrontation Clause. The Court held that the Federal Confrontation Clause guarantees a criminal defendant "a

right to meet face to face all those who appear and give evidence at trial." *Coy*, 487 U.S. at 1016 (quotation omitted). Because the screen prevented the witnesses from seeing the defendant, it denied him his right to confront his accusers face-to-face. *Id.* at 1020.

■ In *Craig*, the issue was whether allowing several child witnesses to testify outside of the defendant's presence by one-way closed circuit television so as to prevent them from suffering serious emotional distress violated the defendant's Confrontation Clause rights. *Craig*, 497 U.S. at 840-41. The Court upheld the constitutionality of this procedure, holding that face-to-face confrontation is not an "indispensable" element of the Confrontation Clause. *Id.* at 849-50. The Court ruled that the Confrontation Clause "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850. In determining whether the testimony's reliability is otherwise assured, the Court focused on the extent to which the following four elements of confrontation were satisfied: (1) physical presence; (2) oath; (3) cross-examination; and (4) observation of demeanor by the court, defendant and trier of fact. *Id.* at 846, 851. We applied the *Craig* court's analysis in *Peters. See Peters*, 133 N.H. at 794.

■ Using this authority for guidance, we hold that, in the future, when a trial court is considering whether to allow a prosecution witness to testify while wearing a disguise, such as a mask, the court must make specific findings that the disguise is necessary to further an important State interest and that the reliability of the evidence is otherwise assured. *Craig*, 497 U.S. at 850. Determining "[w]hether the reliability of the testimony is otherwise assured turns upon the extent to which the proceedings respect the four elements of confrontation: physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." *Romero v. State*, 173 S.W.3d 502, 505 (Tex. Crim. App. 2005); *see Craig*, 497 U.S. at 846, 851. Additionally, as with decisions to close the courtroom, the trial court's findings supporting allowing the witness to testify while wearing a disguise "must be specific enough that a reviewing court can determine whether the . . . order was properly entered." *State v. Cote*, 143 N.H. 368, 379 (1999) (quotation omitted).

*Affirmed.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.