Hillsborough-northern judicial district
No. 2010-458

STATE OF NEW HAMPSHIRE

v.

MICHAEL SOTO

Argued: September 21, 2011
Opinion Issued: November 22, 2011

*Michael A. Delaney*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*Getman, Schulthess & Steere, P.A.*, of Bedford (*Andrew R. Schulman* and *Clara E. Lyons* on the brief, and *Mr. Schulman* orally), for the defendant.

LYNN, J. Following a jury trial in Superior Court (*Smukler*, J.), the defendant, Michael Soto, appeals his conviction for being an accomplice to first-degree murder. *See* RSA 626:8, 630:1-a, I(a) (2007). We affirm.

I

The defendant's conviction arises out of the fatal shooting of Aaron Kar in Manchester on the evening of January 2, 2007. On the previous day, a man named Bill threatened Roney White's young cousins with a knife at a 7-Eleven store close to Roney's home. When Roney learned of the incident from his cousins, he directed them to identify the man with the knife. Finding Bill standing outside the store, Roney punched him in the face in retaliation and fled the scene. Later that night, apparently in response to Roney's actions, Kar and his friends drove past a small group of people standing on the street, which included Roney, his brother Roscoe White, and their friend Anthony Clagon, and unsuccessfully attempted to hit one of them with a stick from the moving vehicle. No further encounter between the two groups occurred that night.

The next day, at around 2:30 p.m., Bill and another person attacked Roney with a baseball bat as he was walking alone on Nashua Street. Badly injured, Roney stumbled home to his mother and two brothers, Roscoe and Raymond Alleyene. Roney's mother took him to the hospital. Shortly thereafter, Alleyene, Clagon, and Roscoe met at Roscoe's house and discussed the possibility of an armed fight in retaliation for the attack on Roney. After Roscoe failed to get his own gun to work, he called some friends in Nashua, asking them to bring a gun.

That evening, the defendant, his brother Sergio, Andrew Gonzalez, and Clagon's cousin Kim and her children drove from Nashua to Manchester in a red Chevrolet Blazer. The men met Clagon, Alleyene, and Roscoe in the room Roscoe shared with Roney, smoked marijuana, and settled on a plan to find Roney's attackers and confront them. After Roscoe confirmed that the defendant had brought a gun, the six men set out in the Blazer to find Roney's attackers. A short time later, they found a group of people whom they suspected had been involved in Roney's attack gathered near a dumpster. After driving past the group once or twice, they parked the Blazer around the corner and discussed who would do the shooting. They settled on Roscoe as the shooter based on his blood relationship with Roney. The defendant then wiped the gun with his shirt, racked the slide to cock it, and handed it to Roscoe. Roscoe left with a mask on, shot Kar in the leg and abdomen, returned to the Blazer, and the men drove away. Kar later died from his wounds.

The jury convicted the defendant of first-degree murder based on his role as an accomplice in Kar's death. On appeal, the defendant argues that the

trial court erred: (1) in not giving the jury a provocation manslaughter instruction; (2) in not giving a reckless manslaughter instruction; and (3) in permitting the introduction of an audio recording of Roscoe White discussing the crime with an informant.

## II

The defendant first argues that the trial court should have instructed the jury to consider whether the defendant acted under an extreme mental or emotional disturbance caused by extreme provocation, *see* RSA 630:2, I(a), thereby reducing his criminal liability from murder to manslaughter. He argues that "there was overwhelming evidence to support a jury determination that Soto had been adequately provoked within the meaning of [the provocation provision of the manslaughter statute]." We disagree.

The defendant was entitled to the requested jury instruction only if there was some evidence to support a rational finding in favor of that defense. *State v. Balliro*, 158 N.H. 1, 5 (2008) (quotation and brackets omitted). "Some evidence" requires more than a minutia or scintilla of evidence. *Id.* "Where . . . there is simply no evidentiary basis to support the theory of the requested jury instruction, the party is not entitled to such an instruction, and the trial court may properly deny the party's request." *Id.* (quotation omitted). We will search the record for evidence supporting the defendant's requested jury instruction, and we will uphold the denial of a requested jury instruction absent an unsustainable exercise of discretion. *Id.*

"A person is guilty of manslaughter when he causes the death of another . . . [u]nder the influence of extreme mental or emotional disturbance caused by extreme provocation but which would otherwise constitute murder." RSA 630:2, I(a) (2007). Under the common-law rule, to reduce the crime of murder to manslaughter, the provocation must be so severe or extreme as to provoke a reasonable person to kill another person out of passion.[1] *State v. Smith*, 123 N.H. 46, 48 (1983). Even if a reasonable person would have committed the act, still the defendant must have been actually provoked. 2 W. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 15.2(c), at

---

[1] Most modern formulations of the common-law "heat of passion" doctrine measure both the adequacy of the provocation and the severity of the response by a "reasonable person" standard. 2 W. LAFAVE, SUBSTANTIVE CRIMINAL LAW §15.2(b)(10), at 504 (2d ed. 2003). Unlike in the tort context, however, the reasonable person standard in the provocation context is not a standard of acceptable, non-blameworthy conduct; rather it is a fiction that stands for a centuries-old recognition that, in certain extreme circumstances, even an average person of ordinary disposition may suffer a temporary loss of reason and control. *See id.* at 495 ("[T]he reasonable man, however greatly provoked he may be, does not kill."). Provocation manslaughter is, therefore, a "concession to human frailty," reflected in the fact that a person killing

506 (2d ed. 2003). And even a defendant so provoked will not be entitled to a manslaughter instruction where the time elapsing between the provocation and the killing is such that a reasonable person would have cooled. *Id.* § 15.2(d), at 507. "[I]f, from any circumstances whatever, it appears that the party reflected, deliberated, or cooled any period of time before the fatal stroke was given, or if in legal presumption there was time or opportunity for cooling, the killing will amount to murder, being attributable to malice and revenge, and not to mental disturbance." 40 AM. JUR. 2D *Homicide* § 60, at 648 (2008).

Before applying these principles to the facts, we note that our case law has approached provocation manslaughter in two arguably inconsistent ways: as a lesser-included offense of murder, *see State v. Little*, 123 N.H. 433, 435 (1983), and as a "defense" to murder, *see State v. O'Leary*, 153 N.H. 710, 713-14 (2006); *State v. Taylor*, 141 N.H. 89, 94-96 (1996). In contrast to our 1983 decision in *Little*, which referred to provocation manslaughter as a lesser-included *offense* of murder, *see Little*, 123 N.H. at 435-36, in *Taylor* we referred to provocation manslaughter as a *defense* to murder. *See Taylor*, 141 N.H. at 96. We approved of the jury instructions in *Taylor* because the trial court instructed the jury to consider provocation manslaughter alongside both first and second-degree murder, effectively treating provocation as a defense to both charges rather than as a lesser-included offense meriting the jury's attention only after the jury had fully deliberated on both the first-degree and second-degree murder charges. *See id.* Consistent with this holding, in *O'Leary*, we concluded that the trial court erred when it instructed the jury to consider the "lesser-included offense" of provocation manslaughter only after the jury had first acquitted the defendant of first and second-degree murder; despite this error, we affirmed the defendant's conviction because we found the error harmless. *See O'Leary*, 153 N.H. at 713-17.

We have never treated provocation manslaughter under RSA 630:2, I(a) as a true "defense" under the Criminal Code triggering the notice requirements of Superior Court Rules 98(B) and 101, and we decline to do so today. Rather, provocation is best understood as a "partial defense" because, unlike traditional defenses that serve to discharge a defendant's liability for conduct that otherwise constitutes a crime, provocation manslaughter comprises a set of mitigating circumstances that can negate the *mens rea* required for intentional murder and, even where they do not have this negation effect, can warrant a jury in finding the defendant guilty of a

---

under an extreme mental or emotional disturbance in response to extreme provocation has committed a serious crime — manslaughter — but not as serious a crime as first or second-degree murder.

separate, less culpable offense than murder under the Code. *See* Berman & Farrell, *Provocation Manslaughter as Partial Justification and Partial Excuse*, 52 WM. & MARY L. REV. 1027, 1045 (2011) (recognizing this widely-accepted approach). Unlike the defenses of insanity or self-defense, provocation under RSA 630:2, I(a) only reduces, but does not eliminate, the punishment for murder,[2] based on what the law conceives as a lesser degree of culpability for acts done under the influence of extreme mental or emotional disturbance in response to extreme provocation.

Although provocation is only a partial rather than a full defense, because it can operate both to reduce the *mens rea* required for murder and to provide a basis for the jury's invocation of the community's sense of compassion, we conclude that provocation, when properly raised, should be treated similarly to self-defense. Accordingly, to guide trial courts in the future, we advise that, in a murder prosecution, the State must prove the absence of provocation beyond a reasonable doubt when the defendant presents some evidence to support a rational finding that he caused the death at issue under the influence of extreme mental or emotional disturbance caused by extreme provocation. *See Mullaney v. Wilbur*, 421 U.S. 684, 704 (1975). For example, in a first-degree murder prosecution under RSA 630:1-a, I(a), where a defendant presents evidence to support a rational finding of provocation manslaughter, juries should be instructed that to find the defendant guilty of first-degree murder the State must prove beyond a reasonable doubt: (1) that the defendant caused the death of the victim; (2) that he acted "purposely" under the special definition of that term in RSA 630:1-a, II;[3] and (3) that he did not act under the influence of extreme mental or emotional disturbance caused by extreme provocation. The jury should also be given an acquittal first instruction indicating that, if the jury finds the defendant not guilty of first-degree murder pursuant to the foregoing instructions, it should next consider whether the State has proved, again beyond a reasonable doubt, the elements of second-degree murder under RSA 630:1-b, I(a): (1) that the defendant caused the death of the victim; (2) that he acted knowingly; and (3) that he did not act under the influence of extreme mental or emotional disturbance

---

[2] In our statutes, a person convicted of first-degree murder must be sentenced to life imprisonment without the possibility of parole. RSA 630:1-a, III (2007). By contrast, a person convicted of manslaughter may be sentenced to no more than thirty years imprisonment. RSA 630:2, II (2007).

[3] The definition of "purposely" found in the first-degree murder statute has two components: (1) that the defendant's conscious object was to cause the death of another; and (2) that the defendant's acts in furtherance of this object were deliberate and premeditated. *See* RSA 630:1-a, II (2007). This specific definition applicable to the first-degree murder offense proscribed by RSA 630:1-a, I(a) is different from the general definition of "purposely" which applies to other crimes in the Criminal Code. *See* RSA 626:2, II(a) (2007).

caused by extreme provocation. Once again, the jury should be given the acquittal first instruction and told that if it finds the defendant not guilty of second-degree murder, it should then go on to consider whether he is guilty of provocation manslaughter, the elements of this offense being: (1) that the defendant caused the death of the victim; and (2) that the defendant acted either purposely or knowingly. The jury should also be instructed that, if it reaches the crime of provocation manslaughter in its deliberations, the defendant may be found guilty of this crime if the State proves the foregoing two elements beyond a reasonable doubt even if the jury concludes that the defendant acted under the influence of extreme mental or emotional disturbance caused by extreme provocation.[4]

Turning now to the circumstances of the instant case, we conclude that the undisputed facts culminating in Kar's death reveal no evidence upon which a provocation instruction was warranted. At least two hours passed between the moment the defendant learned by telephone that Roney had been attacked and the moment the defendant and his friends found and killed Kar. In that time, the defendant located a loaded gun, drove with his friends from Nashua to Manchester, met with Roscoe and several others at Roscoe's home, smoked marijuana, and discussed how to avenge the attack on Roney. The drive to Manchester took about one-half hour and the discussion in Roney's home took at least an additional half-hour. Then, with the defendant's brother driving, they set out to find Roney's assailants on the street. When they found the men they were looking for, they drove past once or twice, parked around the corner, and discussed for about seven or eight minutes who would do the shooting. After the group settled on Roscoe as the shooter, the defendant pulled out a gun, wiped it off, cocked it, and gave it to Roscoe, telling him the gun was "smooth."

This sequence is not consistent with a sudden emotional distur- bance from which the defendant had no time to regain control of his passions. Even assuming that Kar was the person with Bill during the attack on Roney the day before, and that such attack both actually and reasonably provoked the defendant, a reasonable person would not remain in that extreme emotional state after driving to a different city, meeting with several friends to discuss how to retaliate, taking the time to smoke

---

[4] The instruction on the elements of provocation manslaughter specified in the text also takes account of the fact that this offense can be charged as a stand-alone crime. *See, e.g., State v. Darcy*, 121 N.H. 220, 221 (1981). That is, in circumstances where the prosecution is prepared to accept the fact that the defendant meets the criteria for adequate provocation, it can eliminate the need to disprove this circumstance beyond a reasonable doubt by charging the defendant only with violating RSA 630:2, I(a). *Cf. Patterson v. New York*, 432 U.S. 197, 199 n.3 (1977) (quoting New York statute providing that in prosecution for manslaughter, provocation need not be proved).

marijuana, and again driving to search for one's provokers. The law is careful to distinguish a sudden rush of passion following extreme provocation, on the one hand, from a desire for revenge, on the other. *See State v. Henson*, 197 P.3d 456, 464 (Kan. 2008). A provocation manslaughter instruction is simply not appropriate where, as here, the defendant has killed after a period of reflection and deliberation during which a reasonable person's passions would have cooled. *See* LAFAVE, *supra* § 15.2(d), at 507; *see also State v. Ramirez*, 569 P.2d 201, 213 (Ariz. 1977) (four and a half hours sufficient to show cool state of mind); *Com. v. Colon*, 866 N.E.2d 412, 425 (Mass. 2007) ("[W]here the alleged provocation is followed by at least a few minutes during which the defendant and the victim are separated, and then the defendant *seeks out the victim*, a charge of voluntary manslaughter based on provocation is not warranted." (emphasis added)); *Com. v. Keohane*, 829 N.E.2d 1125, 1130 (Mass. 2005) ("[E]ven where sufficient provocation exists, if a defendant leaves the scene of the provocation . . . and then returns to attack the victim, the defendant is considered to have had adequate opportunity for his anger to subside."); *People v. Pouncey*, 471 N.W.2d 346, 351 (Mich. 1991) (going to safe harbor and retrieving gun sufficient cooling time).

Equally implausible is the defendant's contention that he had not actually cooled off. "[A defendant] cannot have his homicide reduced to voluntary manslaughter if . . . he has actually cooled off by the time he commits his deadly act." LAFAVE, *supra* § 15.2(e), at 509. Anger alone is not sufficient to warrant a provocation instruction; the law requires an extreme emotional response to a sufficiently provoking event. *Washington v. State*, 808 N.E.2d 617, 626 (Ind. 2004). Here, the defendant's actions leading up to the killing reveal a calm and calculating state of mind, guided not by a sudden, uncontrollable passion but by a desire to avenge the beating of his friend. *See* LAFAVE, *supra* § 15.2(a), at 494 ("A passion for revenge, of course, will not do." (quotation omitted)). Even after learning of the attack on Roney, driving from Nashua to Manchester with a gun, meeting his friends to plot a violent response, and locating Roney's assailants, the defendant had the presence of mind to wipe the gun down with his shirt, rack the slide, and advise Roscoe that the gun was "smooth." For these reasons, the trial judge acted well within his discretion in refusing to instruct the jury as to provocation manslaughter.

## III

The defendant next argues that the trial court erred by refusing to instruct the jury on reckless manslaughter as a lesser-included offense of reckless second-degree murder. In addition to the indictment charging the defendant with first-degree murder, he also was charged in a separate

indictment with second-degree murder for allegedly recklessly causing the death of Kar under circumstances manifesting extreme indifference to the value of human life. *See* RSA 630:1-b, I(b) (2007).

In general, a defendant charged with one offense is entitled to have the jury consider any lesser-included offenses. *State v. Cameron*, 121 N.H. 348, 350 (1981). This rule safeguards criminal defendants' due process rights by providing juries an alternative to convicting on only the crime the prosecution opted to charge and minimizing the risk that juries will make "all or nothing" decisions. *See Beck v. Alabama*, 447 U.S. 625, 637-38 (1980). Whether the defendant is entitled to a lesser-included offense instruction involves a two-part inquiry: first, the lesser offense must be embraced within the definition of the greater offense; and second, the evidence adduced at trial must provide a rational basis for a guilty finding on the lesser offense. *See State v. Thomas*, 154 N.H. 189, 192 (2006).

The State contends that any error in failing to instruct the jury on reckless manslaughter was harmless beyond a reasonable doubt. An error is harmless only if it is determined, beyond a reasonable doubt, that the verdict was not affected by the error. *State v. Hernandez*, 159 N.H. 394, 402 (2009). The State bears the burden of proving that an error is harmless. *Id.*

The State concedes, as it must, that reckless manslaughter is a lesser-included offense of murder. *See* RSA 630:2, I(b) (2007); *State v. Howland*, 119 N.H. 413, 416 (1979). We also assume without deciding that the evidence at trial would have supported a rational conclusion that the defendant acted merely recklessly (rather than recklessly with extreme indifference to the value of human life) in giving Roscoe the gun used to kill the victim. In this case, however, any error in refusing to instruct the jury on reckless manslaughter was harmless beyond a reasonable doubt. The defendant was charged with two offenses: first-degree murder, requiring that the defendant caused Kar's death purposely, *see* RSA 630:1-a, I(a) (2007); and reckless second-degree murder, requiring that the defendant caused Kar's death recklessly under circumstances manifesting extreme indifference to the value of human life, *see* RSA 630:1-b, I(b) (2007). The trial judge instructed the jury as to both offenses, correctly identifying their elements for the jury's consideration. Further, the judge issued an "acquittal first" instruction, telling the jury they must first acquit the defendant of first-degree murder before considering the lesser offense of second-degree murder. Because the jury in this case convicted the defendant of *purposeful* first-degree murder even though they had the option of convicting the defendant of the less serious offense of *reckless* second-degree murder under circumstances manifesting an extreme indifference

to the value of human life, it follows that the jury would not have considered the still less serious offense of reckless manslaughter (not involving extreme indifference to life) even if it had received such an instruction. We therefore conclude that any error in failing to give such an instruction was harmless beyond a reasonable doubt.

IV

Finally, the defendant objects to the admission of a jailhouse recording of a conversation between Roscoe (who was at the time incarcerated on an unrelated matter) and a confidential informant. In that recording, Roscoe confessed to having shot the victim and shared certain details leading up to and following the shooting. He also told the informant that the gun was already "cocked back" and referred in the same sentence to "Mike," which prompted the informant to ask Roscoe if he meant that "Mikey" — the defendant — had cocked the gun for him. Roscoe did not intelligibly answer the informant's question. The defendant argues that this recording contained inadmissible hearsay and otherwise violated his state and federal confrontation rights. The State contends that the court properly admitted the recording as a statement against penal interest, and that any error was harmless.

█ █ Assuming without deciding that the admission of the exchange constituted error, we agree with the State that any such error was harmless. For an error to be harmless, the State must prove beyond a reasonable doubt that it did not affect the verdict. *Hernandez*, 159 N.H. at 402. "An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight, and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." *State v. Thompson*, 149 N.H. 565, 567 (2003) (quotation omitted). Here, the recorded conversation tended only to prove (1) Roscoe's role as the shooter and his recollections of certain details of the shooting, and (2) the defendant's role in cocking the murder weapon for Roscoe. The defendant does not dispute the former point. As to the latter, the defendant's argument is unavailing for two reasons. First, Andrew Gonzalez testified at trial that the defendant cocked the gun before handing it to Roscoe, making the disputed portion of the recording cumulative as to that fact. Second, whether or not the defendant cocked the gun is, on the facts here, wholly unnecessary to a finding of accomplice liability. Even if that fact lent some probative weight to the State's contention that the defendant shared Roscoe's intent to kill, the other evidence against the defendant overwhelmingly implicated him in the scheme to kill Kar. For example, Clagon testified that, sometime after Roscoe placed a telephone call to Nashua

asking the person on the other end of the line to "bring that thing," the defendant and his brother arrived at Roscoe's home in Manchester. Roscoe asked the defendant, in person, if he had brought "the thing" and the defendant confirmed that he had. Clagon and Gonzalez both testified that, after the defendant and his friends located their targets, they parked around the corner to discuss who would do the shooting; Gonzalez testified that the defendant volunteered to do it. And, most importantly, both Clagon and Gonzalez testified that the defendant handed the gun to Roscoe, who then walked around the corner and shot Kar. Given this evidence, even absent the disputed portion of the recorded conversation between Roscoe and the confidential informant, there remained overwhelming evidence to support a finding of guilt beyond a reasonable doubt.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.

Merrimack
No. 2010-548